## WILSON v. CITY OF PONTIAC.

1. TAXATION—"SCAVENGER SALE"—CONSTRUCTION OF STATUTES.
   In interpreting act relative to "scavenger" sale of lands of which the State had acquired title through previous tax sales, the court must ascertain the meaning of the statute, give it full force and effect, coloring the construction by the purpose of the act as it is remedial and entitled to a liberal construction (Act No. 155, Pub. Acts 1937, as amended).

2. SAME—CONSTRUCTION OF STATUTES.
   In interpreting act relative to "scavenger" sale of lands, the court is under a duty to draw inferences from the evident intent of the legislature, as gathered from a view of the law in its entirety, and render effectual the specific things which are included in the broad and comprehensive terms and purposes of the law (Act No. 155, Pub. Acts 1937, as amended).

3. SAME—LANDS SOLD AT "SCAVENGER SALE"—IMMEDIATE RESTORATION TO TAX ROLLS.
   Provision of scavenger act that "lands disposed of under contract or deed * * * shall be immediately subject to taxation by the several taxing units having jurisdiction," when considered in connection with purpose of act stated in section relating to classification of such lands "with the end in view of rehabilitating such lands as rapidly and speedily as possible and returning said lands to the tax rolls," requires holding that when the bid of a purchaser at the sale is accepted by the State land office board the land shall be subject to taxation and that such purpose shall be effected upon notice of sale given by the board's agent to the county treasurer who in turn is obliged to notify respective assessing officers who must place the properties upon the proper assessment rolls (Act No. 155, §§ 5, 7-9, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

4. COSTS—CONSTRUCTION OF SCAVENGER ACT.
   No costs are allowed in mandamus proceeding to compel tax assessing officials to comply with "scavenger act," in which

(79)

question as to proper construction to be given certain provisions was presented (Act No. 155, §§ 5, 7-9, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

Mandamus by Charles L. Wilson, a taxpayer, against City of Pontiac, a municipal corporation, William R. Ransom, city assessor, and board of review of the City of Pontiac to compel the city to place immediately on its tax rolls all parcels of land sold under Act No. 155, Pub. Acts 1937, as amended. Attorney General intervened to oppose the petition. Submitted May 22, 1940. (Calendar No. 41,203.) Writ granted June 4, 1940.

*Charles L. Wilson (Harry J. Merritt*, of counsel), for plaintiff.

*William A. Ewart*, for defendants.

BUTZEL, J. This is an original petition for mandamus by a taxpayer of the city of Pontiac to direct the city of Pontiac to place on its tax rolls immediately all parcels of land sold under the "scavenger" act (Act No. 155, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 3723-1 *et seq.*, Stat. Ann. § 7.951 *et seq.*]), irrespective of whether the State land office board has executed deeds or contracts. The attorney general has intervened to oppose the petition.

According to the allegations of the petition, a "scavenger" sale was started in Oakland county on February 13, 1940, and certain lands were bid in in accordance with section 7 of the act (set forth in the margin). Some of the lands were bid in by strangers

SEC. 5. Any municipality may at any time prior to the sale provided for in section 7 of this act make application to the State land office board for the withholding of the lands in said application from the said sale, for a period of 1 year from the date the title vests in the State, and the said State land office board shall with-

to the title who deposited cash, but no deeds have yet been issued by the State land office board; other lands were bid in by "owners" as defined in section 5 (set forth in the margin), and arrangements were made to purchase on contract as permitted by section 7, but no contracts have yet been issued. In obedience to

hold such lands from said sale, which lands shall be held subject to the lien of the city for delinquent taxes and special assessments. In the event the taxes on said lands included in said application are not redeemed or paid by said municipality, such lands shall be offered for sale at the next succeeding sale held the following year as provided in section 7 of this act the same as though said application had not been made and the proceeds of such sale paid pro rata to such municipality as provided in section 10 of this act.

The term "owner" as used in this act shall mean the owner in fee, mortgagee, land contract vendee, or one having a substantial interest by way of actual investment in the property, priority to be given the one having the largest financial investment in the property.

The term "municipality" as used in this act shall mean any county, city, village, township or school district. The term "taxing unit" as used in this act shall include any municipality as herein defined and any other taxing unit in this State. (As amended by Act No. 244, Pub. Acts 1939.)

SEC. 7. In sufficient time prior to each second Tuesday of February after the vesting of title in the State of Michigan, the State land office board shall prepare lists of the descriptions of said parcels of land in each county of this State under its jurisdiction and control: *Provided,* That parcels of land conveyed or deeded under section 5 of this act shall be omitted from such lists. Under rules and regulations of the board, the several parcels of land appearing upon such lists shall be offered for sale separately at the office of the respective county treasurers to the highest bidder at said sale beginning on the second Tuesday of February of each year. Such sale may be continued from day to day until all parcels have been offered for sale: *Provided,* That no bid shall be accepted for a smaller sum than 25 per cent. of the assessed valuation of the parcel of land as fixed and determined at the last assessment for the year preceding the vesting of title in the State of Michigan as shown by the records of the county treasurer. The board may designate the several county treasurers to act as agents of the board in the preparation of such lists and in the conducting of such sale, the expense of which shall be paid by said board, or may provide for the conducting of said sale by a representative of the board. Any county, township, city, village, school district or other taxing unit having any taxes or special assessments cancelled by the vesting of title in the State of Michigan may, either severally or in combination, bid at said sale for such lands as may be needed for public purposes, but not for resale, and shall have authority to make such bid and appropriate any money necessary therefor. Such taxing units may purchase, hold and dedicate said lands for any public purpose: but such taxing units shall not have authority to purchase and hold said lands for resale. No

the duty imposed by section 7, repeated in section 9, the State land office board notified the treasurer of Oakland county, who in turn notified defendants of the sales of the properties offered at the scavenger sale. Plaintiff claims that the properties thus sold became taxable "from the moment the gavel fell clos-

bid shall be accepted unless payment in cash is made within 24 hours of the bid, and such bid shall remain open for 24 hours: *Provided,* That if any person having any interest in said lands as hereinafter in this section provided, shall within 24 hours following such bid, make application to the board or its representative, payment in cash shall not be required but said board may enter into an agreement with said owner for the payment of the sum bid as hereinafter provided. If payment in cash to take up such bid is not made within said 24 hour period, the land may be reoffered for sale. The term "highest bidder" as used in this section shall be construed to mean the person who makes the highest bid accompanied by payment within 24 hours following such bid. The amount which any taxing unit or units bidding at such sale shall pay in cash shall be only that part of such bid as may be necessary to pay the expenses of the sale plus the proportionate part of the taxes and assessments which were due to the taxing unit or units not bidding and cancelled at the time of vesting of title in the State of Michigan. The proportionate part of the taxes cancelled as to the taxing unit or units bidding shall be construed as cash for the balance of the bid. All payments shall be held in trust for and shall be turned over to the board. The successful bidder shall receive a certificate of purchase from the county treasurer or other agent designated by the board, in such form as shall be furnished by the board. Any person who, at the time of the tax sale, had any interest in any parcel of land so sold, shall have the right for a period of 30 days after such public sale as in this section provided, to meet the highest bid, by paying the amount thereof to the county treasurer, or he may on application to the said land office board enter into an agreement with such board for the payment of the sum required to meet such highest bid, in instalments to be paid over a period of not to exceed 10 years, with interest on unpaid instalments computed at the rate of 6 per cent. per annum from the date of said agreement, which agreement shall provide that said vendee shall forfeit his right thereunder by failure to meet such payment or failure to meet all current taxes and assessments during the life of such agreement before such taxes and assessments become delinquent, and receive, when instalments are fully paid, a quitclaim deed, executed as hereinafter provided.

All such lands disposed of under contract or deed, except lands purchased and held by taxing units for public purposes, shall be immediately subject to taxation by the several taxing units having jurisdiction, and the State land office board shall promptly report any disposition of such lands to the county treasurer of the county wherein the same are located, who in turn shall immediately report same to the proper assessing officers. If such bid is not met by the above-named parties in interest any city, village, township, county

ing the sale," and that it was the duty of the assessing officer of the city of Pontiac or the board of review immediately to place these properties on the assessment rolls, even if the owner not be known at the time (1 Comp. Laws 1929, § 3412 [Stat. Ann. § 7.24]). Plaintiff claims that the refusal of defendants to

---

or school district having any taxes or special assessments cancelled by the vesting of title in the State of Michigan shall have the right either severally or in combination for a period of 15 days after the expiration of the 30-day period above provided, to meet the highest bid, provided said lands are purchased for public use and not for resale. Such taxing units shall have priority in the exercise of such right according to the amounts of their respective tax interests at the time of vesting title in the State of Michigan. The amount which any taxing unit meeting such bid as above provided shall pay in cash shall be only that part of such bid as may be necessary to pay the expenses of the sale plus the proportionate part of the taxes and assessments which were due to the taxing unit or units not bidding and cancelled at the time of vesting title in the State of Michigan. The proportionate part of the taxes cancelled as to the municipality meeting the bid shall be considered as cash for the balance of the bid. If such bid is so met as in this section provided, the certificate of purchase issued to such highest bidder shall be void except that the highest bidder shall be entitled to a return of his money upon surrender of such certificate of purchase, and persons or taxing units so meeting said bid shall forthwith be entitled to receive a quitclaim · deed, or in case of instalment purchases, a land contract, covering the parcel of land so purchased, executed on behalf of the State of Michigan by the board, with the seal of the board attached. In the event that no such bid is met as herein provided, the said highest bidder shall be entitled to receive a quitclaim deed or in case of instalment purchases, a land contract, covering the parcel of land so purchased, executed on behalf of the State of Michigan by the board, with the seal of the board attached.

Any conveyance executed by the board under any of the provisions of this act shall not affect in any way the rights of parties whose interest or interests in said property so conveyed shall have been assessed separately from the real estate, as provided in subsection 16 of section 8 of act number 206 of the public acts of 1893, as amended by act number 94 of the public acts of 1931.

Notice of such sale shall be published by the State land office board in such newspaper or newspapers having general circulation in the respective counties as the board shall designate, said notice to state the time and place of sale, and shall be published once each week for two successive weeks in the same newspaper or newspapers, the second insertion · to be not later than one week prior to the date of said sale.

If any taxing unit having purchased any land under the provisions of this section for public purposes shall at any time decide not to use said land for a public purpose, said land shall be deeded back to the State and shall be sold by the State land office board at the

place these properties on the assessment rolls creates an inequality in the distribution of the tax burden and increases the amount of taxes plaintiff will be obliged to pay for the year 1940. In defendants' return to the order to show cause, the sale of the properties and notification thereof are admitted, but it is claimed

next regular sale. All quitclaim deeds to a taxing unit purchasing land under the provisions of this section for a public purpose shall contain a provision for the reverting of said land to the State when the same is no longer used for a public purpose: *Provided, however,* That in any case where such property deeded under the provisions of this act shall have been used for a bona fide public purpose for a period of not less than 10 years, the reversionary clause of this section shall not apply. (As amended by Act No. 244, Pub. Acts 1939.)

Sec. 8. All other lands under the jurisdiction and control of the board shall be classified with the end in view of rehabilitating such lands as rapidly and speedily as possible and returning said lands to the tax rolls. The State land office board shall make or cause to be made an appraisal of such lands. Said board shall keep on file in its office and under its control all records of appraisals and all deeds or other records used in making such appraisals. The board, through its rules and regulations, shall provide for the filing of objections to the appraisals made, and for the conducting of hearings thereon. The determination of the board shall be final.

The board is authorized to sell any of such lands to the best advantage, but for not less than the appraised valuation to be fixed by the board from time to time, to *reliable purchasers, either at cash or on time payment plans,* such time payments not to run for longer than 10 years from the date of such sale and the board shall, upon request by resolution of the governing body of the county, city, village, township or school district in which said lands are located, transfer such lands as such county, city, village, township or school district shall request, upon proof satisfactory to said board that such lands are needed for public purposes but not for resale, to such county, city, village, township or school district and give a quitclaim deed therefor covering such parcel or parcels of land, executed on behalf of the State of Michigan by the board, with the seal of the board attached. In case of such request by any two or more such taxing units in which such lands are located, the taxing units shall have priority according to the amounts of their respective tax interests at the time of vesting title in the State of Michigan. Such county, city, village or township may hold such lands for any public purpose but not for resale. If any taxing unit having acquired any land under the provisions of this section for public purposes shall at any time decide not to use said land for a public purpose, said land shall be deeded back to the State and shall be sold by the State land office board at the next regular sale. All quitclaim deeds to a taxing unit purchasing land under the provisions of this section for a public purpose shall contain a provision for the reverting of said land to the State when the same is no longer used for a public purpose: *Pro-*

that the properties should not be placed on the tax roll because no deeds or contracts have been issued, and that until such issuance the properties still belong to the State of Michigan and are exempt from the general tax laws as State lands (general property tax law, 1 Comp. Laws 1929, § 3395 [Stat. Ann. § 7.7]),

---

*vided, however,* That in any case where such property deeded under the provisions of this act shall have been used for a bona fide public purpose for a period of not less than 10 years, the reversionary clause of this section shall not apply.

The board is also authorized to provide for such use by the State of Michigan, or any political subdivision thereof, of any of such lands, and to make such other disposition thereof, as the interests of the State or local subdivisions may require. Within 30 days of the expiration of this act such board shall convey and turn over to the department of conservation all lands not sold by such board; and such board shall also assign and set over to the department of conservation all instruments and documents evidencing sales by the board under time payment plans and thereafter the department of conservation shall carry out and perform all undertakings and agreements in such instruments and documents stated to be performed by such board or by the State of Michigan. Upon the expiration of this act the said board shall deliver to the department of conservation all other papers, records and effects of every kind remaining in its possession. Whenever any lands or any interest in any lands are conveyed or turned over to the department of conservation by the said board, such department of conservation shall, in addition to any other powers which such department of conservation might have, be vested with all the powers, rights and duties vested in said State land office board by this act.

SEC. 9. The board shall be a body corporate, may sue and be sued, and shall adopt a seal of which all the courts of this State shall take judicial notice.

The board is authorized, for and on behalf of the State of Michigan, to execute, with the seal of the board attached, such quitclaim deed or deeds, land contract or land contracts, leases for public uses or other documents or papers as may be necessary to carry out the provisions of this act. No power, either specific or implied, is hereby given to said board to enter into any lease or leases with any person, firm, copartnership, association or corporation to be used for any private purposes. Any quitclaim deed or deeds executed by the board shall convey title in fee to land vested in the board under the provisions of this act, free from any encumbrances, except as herein otherwise provided. It shall be the duty of the board to notify the assessing officer of the township or city where any land is located of any deeds, contracts, leases or other disposition of any such land which would enable such land to be returned to the tax rolls for assessment of the interest conveyed thereby.

The provisions of act number 91 of the public acts of 1911, as amended, shall not apply to any land contract executed by the board or purchase money mortgage given to the board.

The board may file any such land contract or mortgage with the

and that if these properties are illegally placed on the tax rolls and later ordered removed, the city of Pontiac will be charged back with the county and school taxes uncollected because of the unauthorized assessment.

The sole question before us in the instant case is whether the lands are subject to taxation when a bid is accepted, or whether the power to tax is deferred until a deed or contract is executed to the successful purchaser.   Section 7 provides:

"No bid shall be accepted unless payment in cash is made within 24 hours of the bid, and such bid shall remain open for 24 hours."

The second paragraph of section 7 declares:

"All such lands disposed of under contract or deed, except lands purchased and held by taxing units for public purposes, shall be immediately subject to taxation by the several taxing units having jurisdiction."

The question is, when are the lands "disposed of?" In interpreting the act our duty is to ascertain the meaning of the statute, to give it full force and effect, coloring our construction by the purpose of its enactment.   The statute is remedial and is entitled to a liberal construction. *Oakland County Treasurer* v. *Auditor General,* 292 Mich. 58.   It is said to be the duty of the court to draw inferences from the evident intent of the legislature, as gathered from a view of the law in its entirety; we must render effectual the specific things which are included in the broad and comprehensive terms and purposes of the law.   *At-*

register of deeds of the proper county without the payment of any fee or tax.  All restrictions as to improvement and use of property contained in the dedication of any recorded plat shall pass with the deed made by the State to the purchaser unless on petition of a majority of the owners of the property within such plat.  The land office board or director of conservation shall determine that such restrictions shall be set aside.

*torney General* v. *Railway Co.*, 210 Mich. 227; *Oakland County Treasurer* v. *Auditor General, supra.* The part of section 7 quoted above states that the lands sold shall be "immediately" subject to taxation. Section 8 referring to other lands subject to the jurisdiction and control of the board states that they shall be classified "with the end in view of rehabilitating such lands as rapidly and speedily as possible and returning said lands to the tax rolls." The general tenor of the act is to rehabilitate for tax purposes, with certain exceptions, lands acquired by the State "by virtue of any tax sale." In keeping with the policy of the act, we think the word "immediately" in section 7 refers to the time when a bid may be accepted as provided in the first paragraph of section 7, and not the time when the transaction may be culminated by the execution of a deed or land contract. The rights of one who ultimately acquires the land spring from the acceptance of a bid though defeasible, for that is the occasion which determines the purchase price and starts running the time limitations for the favored purchasers. The expression "disposed of under contract or deed" following the phrase "all such lands" in the second paragraph of section 7 is only descriptive of the lands for which bids have been accepted in accordance with the preceding paragraph of this section.

The charge is made by plaintiff and admitted by the defendants that, within the time prescribed, the State land office board by its agent in charge of its sale, in pursuance of section 7 of said act, as amended, reported to the county treasurer who, in turn, notified the defendants of the sales of the properties sold at the scavenger sale. Upon such notice, it became the duty of the defendants to place such properties on the assessment roll of the city of Pontiac for 1940 and subject them to taxation.

A writ of mandamus shall issue in accordance with this opinion. No costs.

Bushnell, C. J., and Sharpe, Potter, Chandler, North, McAllister, and Wiest, JJ., concurred.