CITY OF DEARBORN v. STATE TAX COMMISSION.

CITY OF HIGHLAND PARK v. CITY OF DETROIT.

1. AUTOMOBILES—STATUTES—REGULATION—TAXATION.

Statutory provision requiring payment of 50¢ for each set of registration plates for municipally- or State-owned motor vehicles, contained in section of vehicle code requiring the collection of "specific taxes at the time of registering a vehicle * * * which shall exempt it from all other taxation, either State or local * * * except as herein otherwise provided by this act" *held*, to have been intended to effect a regulatory purpose and designed to furnish means of identification to the public generally rather than to constitute a tax, especially in view of prior legislation on the same subject (CLS 1956, § 257.801, as amended by PA 1960, No 104).

2. STATUTES—CONSTRUCTION—ENACTMENT OF A CODE.

It may be assumed that in the enactment of a code of law the legislature had in mind the prior statute law of the State relating to the same subject.

3. AUTOMOBILES—IDENTIFICATION—POLICE POWER.

A reasonable provision by ordinance or statute, such as the imposition of a charge of 50¢ for a set of registration number plates, for the identification of motor vehicles using the public highways, is a proper exercise of the police power (CLS 1956, § 257.801, as amended by PA 1960, No 104).

4. MUNICIPAL CORPORATIONS—TRANSPORTATION SYSTEM—AFTER-ACQUIRED PROPERTY—TAXATION.

The requirement of home-rule city act and charter adopted by city thereunder that municipality which acquires a transporta-

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 8] 5A Am Jur, Automobiles and Highway Traffic § 113.
[2] 50 Am Jur, Statutes § 339.
[3] 5A Am Jur, Automobiles and Highway Traffic § 86 *et seq.*
[4] 51 Am Jur, Taxation §§ 559, 563.
[6] 50 Am Jur, Statutes §§ 223, 303.
[7] 33 Am Jur, Licenses §§ 41–46.
[9] 5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

tion system should pay taxes on the physical property of the entire system, the same as though privately owned, subjects after-acquired property to taxation the same as that acquired at the original purchase (CLS 1956, § 117.4f; Detroit Charter, title 4, chap 13, § 14).

5. AUTOMOBILES—MUNICIPAL CORPORATIONS—TAXATION—CONSTRUCTION OF STATUTES.

Imposition of nominal charge of 50¢ per set for registration plates for municipally-owned motor vehicles not specifically designated as a tax, being a fixed sum and not based on any formula for computation and incidental to the regulatory provision for identification, *held*, when vehicle code is viewed in its entirety, not to be a tax notwithstanding the inclusion of such provision in section of the vehicle code subjecting motor vehicles to weight taxes (CLS 1956, § 257.801, as amended by PA 1960, No 104).

6. STATUTES—NOMENCLATURE—IMPLIED TAX.

The precise nature of a burden imposed by public authority is not necessarily determined by the name applied to it but depends on the intent of the legislative body prescribing it, the purpose thereof, and the incidents pertaining to it, and a measure not specifically designated as a tax will not normally be implied to be a tax where it is not larger than sufficient to defray expenses of regulation.

7. LICENSES—FEES—PRESUMPTION OF REASONABLENESS.

What is a reasonable fee for a license must depend largely upon the discretion of the legislature, having reference to all the circumstances of the case, the amount imposed being presumed reasonable unless the contrary appears upon the face of the law itself or is established by proper evidence.

8. TAXATION—AUTOMOBILES—EXEMPTION—MUNICIPALLY-OWNED VEHICLES.

The imposition of fee of 50¢ for a set of license plates for municipally-owned vehicles operated on the public highways, not being more than a mere nominal amount, does not effect an exemption of such vehicles from local taxation as personal property under the general law of the State (CLS 1956, § 257-.801, as amended by PA 1960, No 104).

9. COSTS—LOCAL TAXATION OF CITY BUSES.

No costs are allowed on appeal in consolidated appeals from State tax commission and circuit court involving taxation of city buses stored and maintained in other assessing units (CLS 1956, § 257.801, as amended by PA 1960, No 104).

Consolidated appeals from State Tax Commission and from Wayne; Bohn (Theodore R.), J. Submitted November 8, 1962. (Docket Nos. 60, 61, Calendar Nos. 49,739, 49,779.) Decided December 4, 1962.

State Tax Commission, in determining propriety of personal property tax by City of Dearborn, ruled licensed motor vehicles of Detroit street railways stored and maintained within Dearborn city limits exempt. City of Dearborn appeals. Reversed.

. Petition by City of Highland Park, a municipal corporation, Harry E. Phillips, its assessor, and School District of the City of Highland Park, a municipal corporation, against the City of Detroit (Department of Street Railways), a municipal corporation, for declaration of rights relative to taxation of licensed motor buses stored and maintained within Highland Park city limits. Decree for plaintiffs. Defendant City of Detroit appeals. Affirmed.

*Ralph B. Guy, Jr.*, Corporation Counsel, and *Harry C. Tatigian*, Assistant Corporation Counsel, for City of Dearborn.

*Colin J. McRae*, City Attorney, and *George W. Moore*, Assistant City Attorney, for City of Highland Park and Harry E. Phillips.

*Travilla G. Daines*, for School District of the City of Highland Park.

*Robert Reese*, Corporation Counsel, *Vance G. Ingalls* and *Julius C. Pliskow*, Assistant Corporation Counsel, for City of Detroit (Department of Street Railways).

CARR, C. J.  The city of Detroit operates through its department of street railways a transportation system which it acquired several years ago.  In connection therewith it maintains facilities for the storage and repair of equipment, including buses, within the corporate limits of the cities of Dearborn and Highland Park.  For several years, prior to 1960, the said cities assessed such motor buses and other equipment, stored and maintained within their limits, as personal property.  The city of Detroit paid the taxes so assessed, apparently without question, and paid like taxes on its buses and other personal property of the transportation system stored and maintained in Detroit.  In the fall of 1960, said city's legal department rendered an opinion to the effect that under applicable statutory provisions the buses of the street railway system were not subject to taxation under the general property tax law of the State.  Thereafter payment of taxes assessed was made under protest with respect to passenger and commercial vehicles and motor vehicle buses registered in the name of the department of street railways on each of which the sum of 50¢ had been paid to the State of Michigan as required by provisions of the motor vehicle code, hereinafter cited.

The 1960 assessment made by the city of Dearborn on the motor vehicles of Detroit was appealed to the board of review which sustained the action taken, specifically finding that the assessment was "just and fair and should stand."  From such finding the city of Detroit appealed to the Michigan State tax commission asserting that its vehicles, registered with the State and operated in connection with its transportation system, were exempt from taxation under the general property tax law.  Following a hearing before the commission, in which the Dearborn and Highland Park appeals were consolidated, the com-

mission sustained the claim of the taxpayer and ordered a reduction of the assessment of the city of Dearborn in the amount of the assessed valuation of the personal property in question. On leave granted the city of Dearborn has appealed from the action of the commission.

The city of Highland Park, its assessor, and the school district of said city, instituted a proceeding in the circuit court of Wayne county under the declaratory judgment act[1] of the State, alleging that a controversy had arisen between the plaintiffs and the department of street railways of Detroit with reference to the right to tax motor buses owned and operated by the latter and stored and maintained within the corporate limits of Highland Park. The petition cited statutory and charter provisions claimed to be pertinent to the issue, and the court was asked to declare that the Detroit motor buses in question were subject to taxation and that the legislature had not by the motor vehicle code of 1949, requiring the payment of 50¢ for a set of number plates for each vehicle, exempted such property from local taxation. It was the contention of the plaintiffs in such proceeding that the charge imposed was not a specific tax but, rather, was in the nature of a regulatory fee. The county of Wayne was joined as a party to the proceeding, as a defendant, because of its interest in the taxation problem, and filed its answer to plaintiffs' petition. The city of Detroit did likewise, and the issue was joined and submitted to the circuit court for determination.

The circuit judge before whom the case was heard filed a written opinion citing pertinent statutory provisions the interpretation of which was involved in the controversy, and embodying also a stipulation of facts into which the parties had entered with

---

[1] PA 1929, No 36 (CL 1948, § 691.501 et seq. [Stat Ann § 27.501 et seq.]).

reference to the character of the personal property in question and reciting that property taxes had been assessed and paid thereon in prior years since 1940. The registration of the motor vehicles in question with the secretary of State, including the payment of 50¢ per set of plates for each such vehicle, was also covered by the stipulation.

The conclusions reached by the trial judge were summarized in the following specific findings:

"(a) That the provisions of CLS 1956, § 257.801, as amended by PA 1960, No 104 (Stat Ann 1961 Cum Supp § 9.2501) do not provide for a specific tax or vehicle weight tax so far as the motor buses of the defendant department of street railways are concerned, but merely provide for an identification license, tag or plate under the police powers of this State.

"(b) That the motor buses owned and operated and maintained by the defendant department of street railways within the corporate limits of plaintiff city of Highland Park are subject to the assessment and collection of personal property taxes as provided by the general tax law and [section 4f of] the home-rule act as amended, of the State of Michigan, being CLS 1956, § 117.4f (Stat Ann 1961 Cum Supp § 5.2079), and the charter of the city of Detroit.

"(c) That the legislature in the enactment of CLS 1956, § 257.801, as amended by PA 1960, No 104 (Stat Ann. 1961 Cum Supp § 9.2501), did not intend the provisions thereof should be interpreted as a specific tax or vehicle weight tax."

A decree was entered in accordance with the opinion, and the city of Detroit has appealed therefrom. Said appeal has been consolidated with the appeal of the city of Dearborn from the order of the State tax commission for submission to this Court, the 2 proceedings involving the same question.

The motor vehicle code of 1949[2] as originally enacted provided in part in section 801 thereof as follows:

"The secretary of State shall collect the following specific taxes at the time of registering a vehicle, required to be registered hereunder, which shall exempt it from all other taxation, either State or local, except the fees and taxes provided by law to be paid by certain carriers operating motor vehicles and trailers under Act No 254 of the Public Acts of 1933, being sections 475.1 to 479.20, inclusive, of the Compiled Laws of 1948, and except as herein otherwise provided by this act. * * *

"(e) For each motor vehicle owned and operated by the State of Michigan, State institution, or municipality thereof, 50 cents per set."

Said provision was placed in chapter 7 of the code, which chapter is captioned "Registration Fees." It will be noted that the opening sentence of section 801, which directs the collection of certain specific taxes and provides for the exemption, contained at the end thereof the modifying clause "except as herein otherwise provided by this act." Such concluding provision suggests that the legislature had in mind that exceptions were contemplated by the statute from the imposition of the specific taxes prescribed and exemption from other taxation. The city of Detroit bases its contention in the main on the language quoted, insisting that the provision requiring that motor vehicles owned and operated by the State of Michigan, a State institution, or a municipality, should be required to pay 50¢ "per set" constituted the imposition of a tax, at least insofar as the buses and other motor vehicles of the department of street railways of the city are concerned.

In considering the interpretation of the language

---

[2] PA 1949, No 300 (CLS 1956, § 257.1 *et seq.*, as amended [Stat Ann 1960 Rev and Stat Ann 1961 Cum Supp § 9.1801 *et seq.*]).

above quoted from section 801 of the motor vehicle code, section 216 (Stat Ann 1949 Cum Supp § 9.1916) as originally enacted is significant.   Contained therein was the following provision:

"No certificate of title or registration certificate need be obtained for any vehicle of a type subject to registration owned by the government of the United States, State of Michigan, State institution, or municipalities of this State: Provided, That the same shall be designated by proper signs showing in which department of State, municipality, or State institution said motor vehicles are employed."

Such language was repeated in the amendment to said section by PA 1951, No 69 (CLS 1952, § 257.216 [Stat Ann 1952 Rev § 9.1916]).   In PA 1953, No 110, the clause exempting from the registration and certificate of title provisions of the code was limited to vehicles owned by the government of the United States (CLS 1956, § 257.216 [Stat Ann 1955 Cum Supp § 9.1916]).   Such change does not, however, have any bearing on the intent of the legislature in the enactment of the code in 1949.

It is of interest to note that PA 1945, No 255, which amended the prior statute of 1915 governing the registration and identification of motor vehicles operated on the public highways of the State, and provided for specific weight taxes on such vehicles, included in section 7, subd (a) thereof the following clause:

"*Provided, however,* That motor vehicles owned and operated by the State of Michigan, or any municipality thereof, shall be designated by proper signs showing in which department or institution of said State or municipality such motor vehicles are employed, and such department, institution or municipality shall obtain license plates annually from the secretary of State upon applications furnished by him, the cost of same in no case to

exceed 50 cents per pair." (CL 1948, § 256.7 [Stat. Ann 1945 Cum Supp § 9.1438].)

The above provision was incorporated in the section providing for the imposing of specific weight taxes and the exemption from other taxation. The language used, however, clearly suggests that the requirement with reference to obtaining license plates at a cost not exceeding 50¢ per pair was in further- ance of the legislative purpose to require the furnishing of means of identification, and of ownership, of motor vehicles operated by the State or by municipalities thereof. We think it must be assumed that the provision of section 216 of the code as enacted in 1949 was intended to accomplish the same result as was contemplated by the provision quoted from the 1945 enactment. In other words, the basic purpose sought to. be accomplished was regulatory in character and designed to furnish means of iden- tification to members of the public generally who might be concerned with such matter.

It may be assumed that in the enactment of the present motor vehicle code the legislature had in mind the prior statute law of the State relating to the taxation and regulation of motor vehicles using the public highways. It is significant that the legis- lature in providing for the payment of 50¢ per set of plates to be attached to municipally owned and operated vehicles did not refer to the charge made for the plates as a tax. In the light of prior statutory provisions it was in the nature of a charge imposed for the furnishing of license plates designed to carry out the regulation with reference to identifica- tion of vehicles so owned and operated.

It is scarcely open to question that reasonable provision by ordinance or statute for the identifica- tion of motor vehicles using the public highways is a proper exercise of the police power. In *People* v.

*Schneider,* 139 Mich 673 (69 LRA 345, 5 Ann Cas 790), there was involved the validity of an ordinance of the city of Detroit regulating the operation of automobiles on the public streets. The ordinance limited the rate of speed and further required registration in connection with which the official in charge thereof was required to furnish to the applicant aluminum figures sufficient to compose a number corresponding with the number appearing upon the record of registration. The size of such figures was prescribed and provision was made that the person to whom they were delivered should pay the sum of $1 and should display the figures on the rear of his vehicle. Defendant Schneider was prosecuted for an alleged violation of said ordinance. Following his conviction he appealed, claiming that the ordinance was invalid. This Court held otherwise, emphasizing in its opinion that the provision for identification was designed to protect the public and that the measure was a proper regulatory safeguard. The conclusion reached was fairly summarized by the statement (p 679) that:

"It is merely a justifiable exercise of the police power in the interest of the safety of the traveling public."

In the case at bar we think that the requirement that the sum of 50¢ shall be paid in connection with the furnishing of a set of number plates for a State or municipally owned and operated motor vehicle is merely an incident of a proper regulation. The amount thereof and the obvious intent of the legislature to provide a reasonable method for identification of publicly owned and operated motor vehicles, as evidenced by the code of 1949 and by prior legislation, is not consistent with the claim that such payment was intended as a tax.

The charter of the city of Detroit, pursuant to which it acquired and is operating the transportation facility in question,[3] was adopted under the city home-rule act.[4] Said act at the time of the acquisition of said utility by the city specifically authorized the adoption of charter provisions permitting such action and regulating the procedure. The statute further specified that:

"When a transportation utility is so acquired, State and county taxes shall be paid thereon as if privately owned, also local taxes on any portion of such property lying outside of the city limits."

The provision quoted has been repeated in various amendments to the statute, including PA 1955, No 26 (CLS 1956, § 117.4f [Stat Ann 1961 Cum Supp § 5.2079]).

In accordance with the authority granted by the home-rule act the people of the city of Detroit provided in their charter for the exercise of the power permitted for the regulation of the street railway system. Title 4, chapter 13, § 14, of the charter[5] relates to the matter of fares, providing specifically that the board of street railway commissioners should fix such charges at an amount sufficient to pay, among other obligations:

"Taxes on the physical property of the entire street car system, the same as though privately owned."

It may be assumed that the requirements imposed by the home-rule act and by the charter have been duly observed. Presumably the payment of taxes

---

[3] See Municipal Code, City of Detroit (1954), charter section, p 75 et seq.—REPORTER.

[4] PA 1909, No 279, as amended (CL 1948, § 117.1 et seq., as amended [Stat Ann 1949 Rev and Stat Ann 1961 Cum Supp § 5.2071 et seq.]).

[5] Municipal Code, City of Detroit (1954), charter section, p 78.—REPORTER.

by the city of Detroit on its passenger buses and other equipment required for operation of the system resulted from the specified liability therefor. We cannot agree with the suggestion advanced by counsel that the property subjected to the taxation in accordance with the statute and the charter was limited solely to that acquired with the purchase of the transportation system from the prior owner. Had any such limitation been intended, we think it would have been clearly expressed.

In the final analysis the claim that the charge of 50¢ for a set of license plates for each motor vehicle operated by the city of Detroit in connection with its transportation utility is a tax is predicated on the inclusion of provision therefor in the section of the motor vehicle code relating to the computation and collection of the weight tax imposed on motor vehicles generally. As before suggested, however, the language of said section indicates that exceptions may be made to the general policy of taxation and exemption of motor vehicles as set forth in said section, hereinbefore quoted in part. The exaction for a set of license plates is not specifically designated a tax, nor is it based on any formula for computation. It is a fixed sum, decidedly nominal in amount, and is incidental to the regulatory provision for identification. The Court may "draw inferences from the evident intent of the legislature, as gathered from a view of the law in its entirety." *Wilson* v. *City of Pontiac,* 294 Mich 79, 86.

The precise nature of a burden imposed by public authority is not necessarily determined by the name applied to it but depends on the intent of the legislative body prescribing it, the purpose thereof, and the incidents pertaining to it. The fact that such a burden is expressly designated as a tax is not necessarily controlling. If the application of that term rests on implication, as in the present case, obviously

the nature and purpose of the required payment has added significance. In the case of *Van Horn* v. *People,* 46 Mich 183 (41 Am Rep 159), there was involved an act of the legislature of Michigan imposing, in terms, a *tax* on dogs. The Court held, however, that the act was regulatory in its nature, that it could not be regarded as a revenue measure but was in fact a regulatory expedient adopted for a specific purpose. In consequence, the amount of the charge imposed was not subject to constitutional provisions relating to taxes and taxation generally.

In *Vernor* v. *Secretary of State,* 179 Mich 157 (Ann Cas 1915D, 128), the distinction between a tax and a license fee was considered at some length, the amount thereof and the relation to the purpose sought to be accomplished being emphasized. It was pointed out that imposing an exaction larger than necessary to defray expenses is not mere regulation but amounts to the raising of revenue as a main purpose and is, in consequence, a tax. In connection with the discussion it was said (p 168) :

"It is true that it has been held that what is a reasonable fee must depend largely upon the sound discretion of the legislature, having reference to all the circumstances and necessities of the case. It will be presumed that the amount of the fee is reasonable, unless the contrary appears upon the face of the law itself, or is established by proper evidence." (Citing cases.)

In the case at bar it does not appear that the sum of 50¢ for a set of license plates for a motor vehicle operated on the public highway is more than a mere nominal amount, which actually may be less than the expense involved.

. We are in accord with the conclusion of the circuit court of Wayne county in the suit for a declaratory decree. The amount of the charge for license plates may not properly be regarded as a tax exempting:

the buses of the Detroit transportation system from taxation as personal property under the general law of the State. It is, rather, an incident of regulation under the police power having for its purpose means of identification of motor vehicles operating on public streets and highways. The conclusions reached on the basic issues discussed render unnecessary the consideration of other questions raised by counsel.

The decree of the circuit court is affirmed; and the order of the Michigan tax commission in the city of Dearborn case is set aside with remand for entry of an order in accordance herewith. In view of the nature of the controversy, no costs are allowed in either case.

Dethmers, Kelly, Souris, and Otis M. Smith, JJ., concurred with Carr, C. J.

Black and Kavanagh, JJ., concurred in result.

Adams, J., did not sit.