ROUGE PARKWAY ASSOCIATES v CITY OF WAYNE

Docket No. 73556. Argued April 3, 1985 (Calendar No. 10).—Decided November 19, 1985.

Rouge Parkway Associates and other owners of commercial property brought an action in the Wayne Circuit Court against the City of Wayne and other municipalities, challenging the constitutionality of a statutorily imposed one percent collection fee upon property taxes voluntarily paid before February 15 of the year following the issuance of a tax bill. The court, William J. Giovan, J., granted the plaintiffs' motion for summary judgment, finding the collection fee violative of the Equal Protection Clause of the Michigan Constitution. The Court of Appeals, J. H. GILLIS, P.J., and GRIBBS and GAGE, JJ., affirmed in an opinion per curiam (Docket No. 64575). The defendants appeal.

In an opinion by Justice BRICKLEY, joined by Justices LEVIN, RYAN, and BOYLE, the Supreme Court *held:*

The provision of the General Property Tax Act which imposes a collection fee upon property taxes voluntarily paid before February 15 of the year following the issuance of a tax bill does not, on its face, create separate classifications that invoke an equal protection challenge; nor did the plaintiffs meet their burden of showing that the effect of the provision on individual taxpayers is arbitrary or unreasonable under the Equal Protection Clause of the Michigan Constitution.

1. States, in exercising taxing power, are limited by the Equal Protection Clause of the Fourteenth Amendment, but the clause imposes no iron rule of equality, prohibiting flexibility and variety appropriate to reasonable schemes of state taxation. The burdens of government need not be shared by taxpayers pro rata. Where there is no suggestion of a suspect classification, the burden is on the challenger to show that the classification lacks a rational relation to a legitimate governmental interest.

2. The revenue-raising procedure utilized in this case is

REFERENCES FOR POINTS IN HEADNOTE

[1] Am Jur 2d, Constitutional Law §§ 746 *et seq.*
Validity of statutory classifications based on population-tax statutes. 98 ALR3d 1083.

within the flexibility and variety appropriate to reasonable schemes of state taxation. It treats all taxpayers alike in charging a flat percentage of the value of property which is neither arbitrary nor unreasonable. The statute, on its face, does not create classifications that invoke an equal protection challenge.

Justice CAVANAGH, concurring, stated that the case should be remanded to the trial court for a determination whether the fee at issue is a tax. If the collection fee was designed to raise revenue for general public purposes rather than to cover specific governmental expenses, it would be a tax and, thus, unconstitutional because the fee is not distinctly stated to be a tax. In addition, because a determination of what expenses the fee was designed to cover may be crucial to the issue whether the fee is a tax, the question should be decided by the Supreme Court.

Reversed and remanded.

Chief Justice WILLIAMS, dissenting, stated that it is important to decide whether the exaction in this case is a fee or a tax. A tax is a revenue-raising exercise of the government's taxing power, while a fee is an exercise of its police power. The government may not seek to raise revenue through an enactment under the police power. A statutorily enacted fee must bear a reasonable relationship to the expense for which it is chargeable. In this case, the defendants have shown no relationship between the size of the tax bill and the cost of collection.

Justice RILEY took no part in the decision of this case.

131 Mich App 631; 346 NW2d 849 (1984) reversed.

### OPINION OF THE COURT

CONSTITUTIONAL LAW — STATUTES — EQUAL PROTECTION.

The collection fee imposed by the General Property Tax Act upon property taxes voluntarily paid before February 15 of the year following the issuance of a tax bill does not, on its face, create separate classifications that invoke an equal protection challenge under the Michigan Constitution (Const 1963, art 1, § 2; MCL 211.44; MSA 7.87).

*Hyman, Gurwin, Nachman, Friedman & Winkelman* (by *Thomas J. Beale*) for the plaintiffs.

*Riley & Roumell* (by *Thomas P. Brady*) and *Cozadd, Shangle, Smith & Andrews* (by *John R. Day*) for the defendants.

Brickley, J. The defendants appeal from a 1981 Court of Appeals affirmance of a Wayne Circuit Court summary judgment which held that a statutory one percent collection fee upon property taxes voluntarily paid before February 15 of the year following the issuance of the tax bill, MCL 211.44; MSA 7.87, violates the Equal Protection Clause of the Michigan Constitution. Const 1963, art 1, § 2.

The plaintiffs, who are commercial property owners, claim that the prescribed fee, which is calculated as a percentage of their property taxes, results in their paying more than most taxpayers for a service—the billing for and receipt of taxes—that is unrelated to the value of the property, and that such a result constitutes an irrational and arbitrary classification.

The defendant municipalities contend that the only classification provided by the statute distinguishes between those who pay by February 15 and those who do not and that this is a valid distinction. They do not agree that a flat percentage fee results in a classification since all property owners under similar circumstances and conditions are treated equally. They argue that the courts below have "artificially imposed . . . a subclassification within the legislative class of taxpayers paying their taxes before February 15."

In the alternative, defendants argue that even if the statute imposes classifications based upon the value of the taxable property, such classifications are constitutionally permissible. They read the statute in question, as it is and as it has developed, as intending that the fee cover the cost of administering the entire property tax program including the assessment process, which, it was alleged by affidavit, requires greater effort and expense, in direct relationship to the higher value of property. In support thereof, they argue that even though it

is called a "collection" fee, it goes to the contingent fund of the local unit of government from which come all funds for the entire cost of taxing and assessing.[1]

In May of 1977, when this suit was commenced, the provision in question, § 44 of the Property Tax Act, 1968 PA 277, provided:

> On receiving such tax roll the township treasurer or other collector shall proceed to collect such taxes. The township treasurer or other collector shall mail to each taxpayer at his last known address on his tax roll, on the receipt of such tax roll, a statement showing the description of the property against which the tax is levied, the assessed valuation of such property and the amount of the tax thereon. The tax statement shall set forth the state equalized valuation. *The expense of preparing and mailing such statement shall be paid from the county, township, city or village funds.* Failure to send or receive such notice shall not in any way prejudice the right to collect or enforce the payment of any tax. The township treasurer shall remain in his office at some convenient place in his township on every Friday in the month of December from 9 A.M. to 5 P.M. to receive taxes, but he shall receive taxes upon any week day when they may be offered. *On all sums voluntarily paid before February 15 of the succeeding year, he shall add 1% for collection fees,* and upon all taxes paid on or after February 15 he may add to the tax and 1% fee an additional collection fee equal to 3% of the tax. Taxes collected by the township treasurer after the last day of February and before settlement with the county treasurer shall have added thereto a 4% collection fee and interest on the tax at the rate of ½ of 1% per month, which payment shall be treated as though collected by the county treasurer. Collection fees

[1] The Legislature has since amended the portion of the statute which is the subject of the plaintiffs' complaint. 1982 PA 503 changed the term "collection fee" to "property tax administration fee."

for years prior to 1964 on taxes which have been paid in full and which have not been heretofore collected by the township treasurer are deemed waived. If the treasurer shall not mail the statements hereinabove required to be mailed on or before December 30, he shall be limited to 1% for collection fees with respect to taxes collected by him on and after February 15. In townships in which the treasurer receives a salary, the township board only may waive all or part of the collection fees on taxes paid on or before February 15. *All fees collected by the township treasurer in townships where the treasurer receives a salary shall be credited to the contingent fund of the township.* In a city in which the treasurer receives a salary the city commission or council may waive all or part of the collection fee on taxes paid on or before the due date established for the collection of taxes. When the bond of the treasurer, as provided in section 43, is furnished by a surety company, the cost of the bond shall be paid by the township from the contingent fund of the township. If the township treasurer is apprehensive of the loss of any personal tax assessed upon his roll, he may enforce its collection at any time, and if compelled to seize property or bring suit in December may. add 4% for collection fees.[2] [Emphasis added.]

The trial court traced the evolution of this legislation, beginning with a territorial act of 1820 (1 Territorial Laws 661, 668), which allowed the tax collector to collect as a fee a sum not exceeding six percent of the taxes collected. In 1843, the compensation was shifted from a percentage of the amount collected to the amount paid by the taxpayer by way of a fee "not exceeding four percent . . . for his collection fees . . . ." 1843 PA 49. Subsequent statutory changes referred to "collection expenses" and, again, "collection fees." In time, salaries for treasurers were allowed, and

---

[2] See n 1.

subsequent amendments provided variously for no fees where there was a salary and later for optional waiver of the fee or its diversion to the local government's contingent fund.[3]

This historical perusal and the present wording of the statute led the trial court to the conclusion that "the only purpose for the 1% collection fee offered by the statute is to compensate for the cost connected with collecting tax bills voluntarily paid." This, in turn, led the trial court to further conclude that the plaintiffs were treated differently, since, because the cost of preparing and mailing the tax bills is constant regardless of the value of a given piece of property, they must pay more than "their share" of collection costs.

The Court of Appeals affirmed. 131 Mich App 631; 346 NW2d 849 (1984).

The United States Supreme Court set forth the federal standard for equal protection where taxation is concerned in *Lehnhausen v Lake Shore Auto Parts Co,* 410 US 356, 359; 93 S Ct 1001; 35 L Ed 2d 351 (1973). In that case, the Court upheld an Illinois statute that had relieved individuals of the personal property tax while continuing it for corporations:

> The Equal Protection Clause does not mean that a State may not draw lines that treat one class of individuals or entities differently from the others. The test is whether the difference in treatment is an invidious discrimination. *Harper v Virginia Bd of Elections,* 383 US 663, 666 [86 S Ct 1079; 16 L Ed 2d 169 (1966)]. Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled,[3] the States have large leeway in making classifications and drawing lines

[3] 1893 PA 206; 1915 PA 187; 1929 PA 217; 1931 PA 88; 1932 PA 21; 1945 PA 8; 1951 PA 85; 1952 PA 251; 1959 PA 216; 1961 PA 144; 1964 PA 275; 1965 PA 411.

which in their judgment produce reasonable systems of taxation. As stated in *Allied Stores of Ohio v Bowers,* 358 US 522, 526-527 [79 S Ct 437; 3 L Ed 2d 480 (1959)]:

"The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. *Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation.* The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value."

In that case we used the phrase "palpably arbitrary" or "invidious" as defining the limits placed by the Equal Protection Clause on state power. *Id.,* at 530. State taxes which have the collateral effect of restricting or even destroying an occupation or a business have been sustained, so long as the regulatory power asserted is properly within the limits of the federal-state regime created by the Constitution. *Magnano Co v Hamilton,* 292 US 40, 44-47 [54 S Ct 599; 78 L Ed 1109 (1934)]. When it comes to taxes on corporations and taxes on individuals, great leeway is permissible so far as equal protection is concerned. They may be classified differently with respect to their right to receive or earn income. In *Lawrence v State Tax Comm,* 286 US 276, 283 [52 S Ct 556; 76 L Ed 1102; 87 ALR 374 (1932)], a state statute relieved domestic corporations of an income tax derived from activities carried on outside the State, but imposed the tax

on individuals obtaining such income. We upheld the tax against the claim that it violated the Equal Protection Clause saying:

"We cannot say that investigation in these fields would not disclose a basis for the legislation which would lead reasonable men to conclude that there is just ground for the difference here made. The existence, unchallenged, of differences between the taxation of incomes of individuals and of corporations in every federal revenue act since the adoption of the Sixteenth Amendment, demonstrates that there may be." *Id.,* at 283-284. [Emphasis added.]

---

[3] Classic examples are the discriminatory taxes on newspapers struck down under the First Amendment (*Grosjean v American Press Co,* 297 US 233 [56 S Ct 444; 80 L Ed 660 (1936)]) or by reason of the fact that they discriminated against interstate commerce or required license taxes to engage in interstate commerce. See *Michigan-Wisconsin Pipe Line Co v Calvert,* 347 US 157 [74 S Ct 396; 98 L Ed 583 (1954)].

---

This Court, in *Alexander v Detroit,* 392 Mich 30, 35-36; 219 NW2d 41 (1974), articulated two tests against which suspect legislation must be measured:

(1) Are the enactment's classifications based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation?
(2) Are all persons of the same class included and affected alike or are immunities and privileges extended to an arbitrary or unreasonable class while denied to others of like kind? [Citations omitted.]

Applying the standards of *Alexander,* the trial court held that "the disparate fees bear [no] reasonable relationship to the actual costs of collection." And, the "taxpayers in the same class are not treated alike but, rather, are separated accord-

ing to the sum of the taxes owed, an unreasonable and arbitrary distinction in view of the object of the collection fee."

As a foundation for deciding that it was necessary to determine the purpose of the collection fee, the trial court made brief reference to the fact that "[t]here is nothing unusual about imposing upon citizens the costs of the functions of government nor in allocating that burden among them in unequal degrees." It pointed out, however, that that would have to be accomplished by taxation, rather than by fee. It concluded that it was not a tax, but, if it were, it would violate Const 1963, art 4, § 32.[4]

We have on occasion opined on the necessity to distinguish between a fee and a tax, but in most instances we needed to do so only in order to determine the applicability of a constitutional or statutory limitation on a "tax." In doing so, we have announced the rule that to pass the test of a "regulatory fee," an exaction must not produce revenue in excess of the cost of the regulation. *Bray v Dep't of State,* 418 Mich 149, 160; 341 NW2d 92 (1983). However, we have never held that the costs of a given regulation must be shared equally by all, *i.e.,* that it is impermissible to charge someone more than their pro-rata share of the cost. Even if the distinction between a fee and a tax were relevant to our analysis here, there has been no discussion in the record or in arguments advanced here that the total revenues collected

---

[4] Const 1963, art 4, § 32 provides:

"Every law which imposes, continues or revives a tax shall distinctly state the tax."

Because we find it unnecessary for equal protection purposes to determine whether this exaction is a fee or a tax, we do not pass on the merits of this conclusion. Also, it has never been an issue on appeal that the collection fee would be unlawful as a tax.

exceeded the cost of either the collection or the administration of the "collection fee." Furthermore, we fail to see how this revenue-raising measure could be described as regulatory in nature. It does not purport in any way to regulate an activity such as would be the case with construction permits, hunting, or professional licenses. Similarly, this exaction does not purport in any way to charge for discretionary services such as admission fees, tuition, and so forth.[5]

We agree with the trial court that it is well-

---

[5] Our brother WILLIAMS, in dissent, cites several cases for the proposition that distinguishing between a fee and a tax makes a difference for equal protection purposes. In *Merrelli v St Clair Shores,* 355 Mich 575, 583; 96 NW2d 144 (1959), our Court said that revenue could not be raised under the guise of a regulatory fee that exceeded the costs of the regulation, in that case, building permits. There was no reference in that case to any disparity between the fee payers or to any equal protection constitutional infringement. In *Vernor v Secretary of State,* 179 Mich 157, 168-169; 146 NW 338 (1914), this Court held that a license fee that raises more money than is needed to administer that program—the registration and identification of motor vehicles—is a tax rather than a fee, and, as such, it violates the title-object requirement of the Michigan Constitution because the title of the enacting statute did not identify it as a tax. Again, there was no reference to a disparity between fee payers. In *Dearborn v State Tax Comm,* 368 Mich 460, 472; 118 NW2d 296 (1962), a fifty cent license fee assessed on Detroit city buses was held to be not a tax, but a fee. That holding resulted in a finding that those vehicles were thereby not paying a state tax and therefore were not exempt from the local property tax of several adjoining cities where the vehicles were used and stored. In all three of these cases, it was important to distinguish between a fee and a tax in order to determine if some provision of the constitution or a statute was offended because the exaction was a tax disguised as a fee. But that is not the issue in this case; here, the result must be the same regardless of what label is applied to the one percent exaction.

The only case cited in dissent that is apposite is *Foreman v Oakland Co Treasurer,* 57 Mich App 231; 226 NW2d 67 (1974), *lv den* 394 Mich 815 (1975). There the Court of Appeals found that a probate fee based upon the value of an estate was not a violation of equal protection or due process, because the graduated fee was related to the cost of administering different-sized estates.

We certainly agree that the fee designed to coincide with the cost of administering the fee payer's estate was reasonably based, but, as we conclude here, we do not agree that any other basis would necessarily be unreasonable.

·established that the burdens of government do not have to be shared by the taxpayers on a pro-rata basis. What has not been shown is why the same concept would not similarly apply to the exaction in this case, whether it be called a tax or a fee.

Also, whether the one percent fee here is for the collection of taxes or for the total tax administration, including assessments, seems not only immaterial, but undiscoverable. The fee goes to the local unit's contingent fund, where it apparently loses its identity. What is material and obvious is that, unlike fees for specialized and optional government services, the receipts of this exaction went to local government for one of the most elementary (and inevitable) functions of government. The suggestion that constitutional fairness requires that such a revenue-raising measure must be apportioned to the fee payer in proportion to the purported cost to that payer strikes us no differently than an assertion that the property tax itself must be levied according to the property owners' proportion of use of local government services. If the government can, as it most often does, spread the cost of the collection of taxes to the general fund and, accordingly, to the taxpayers who pay, often progressively, most of their taxes on a percentage basis without constitutional invalidity, why then can it not raise funds in the course of raising taxes to cover the same costs by way of the same taxing principles?

An equal protection analysis, particularly where there is no suggestion of a suspect classification such as race, begins with the principle that the "burden is on the person challenging the classification to show that it is without reasonable justification," *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 668; 232 NW2d 636 (1975), and "[s]tatutes are cloaked with a presumption of constitu-

tional validity." *Id.,* p 667. A statute will be upheld against an equal protection challenge if it contains a classification rationally related to a legitimate governmental interest. *Shavers v Attorney General,* 402 Mich 554, 613; 267 NW2d 72 (1978).

*Alexander, supra,* involved a refuse collection fee ordinance that charged a higher fee for multiple dwellings of more than four units, except for condominiums and cooperatives. That enactment on its face patently drew a distinction between two classifications which could not be satisfactorily explained by the record in that case. The legislation before us clearly does not on its face draw lines or distinguish between groups. It treats all property taxpayers alike in charging a flat percentage fee on the value of the property, those paying their property tax in a timely fashion being the only group discussed here. However, in concluding that the purpose of the collection fee is to cover costs that do not vary among this class of taxpayers, the lower courts have found an equal protection violation.

It has not been stated by the lower courts, nor argued by the plaintiffs, that we should apply a stricter standard in this case under Michigan's Equal Protection Clause than has been enunciated by the federal courts, and we find nothing in the facts of this case which urges us to do so. We find the revenue raising procedure in this case to be within "the flexibility and variety that are appropriate to reasonable schemes of state taxation," as set forth in *Allied Stores of Ohio v Bowers, supra.* Also, as appellants point out, a flat percentage of a taxpayer's property tax is not an arbitrary decision. A percentage fee of the value of the property grows with inflation and the amount of taxable property, thus making unnecessary occasional reevaluation and adjustment of the fee. We also

take note of the fact that the flat percentage exaction, whether a tax or a fee, is a frequently used method of raising funds for the various costs of government. This one percent collection fee is no exception. A fee or tax based on the fee payer's or taxpayer's pro-rata share of the cost of the instant government service was certainly reasonable, but it is not the only reasonable principle or basis on which to assess such an exaction.

We find that § 44 of the statute in question does not, on its face, create separate classifications that invoke an equal protection challenge and that the plaintiffs have not met their burden of showing that the effect of the provision on individual taxpayers is arbitrary or unreasonable under Michigan's Equal Protection Clause.[6]

The judgments of the Court of Appeals and of the trial court are reversed, and the cause is remanded to the Wayne Circuit Court for further proceedings not inconsistent herewith.

No costs, a statutory interpretation being involved.

LEVIN, RYAN, and BOYLE, JJ., concurred with BRICKLEY, J.

CAVANAGH, J. (*concurring*). I agree with the majority's conclusion that the imposition of a one percent collection fee, pursuant to MCL 211.44; MSA 7.87, does not violate the Equal Protection Clause. Each person who timely pays his property taxes is required to pay the same percentage of the value of his property as a collection fee.

I write separately for two reasons. First, the majority opinion contains several statements sug-

---

[6] Because we reverse the judgment of the Court of Appeals on the constitutional question, we do not address at this time the question what period of limitations would apply to plaintiffs' recovery and the propriety of the denial of their motion to certify a class action.

gesting that the collection fee may be a tax and, if
it is, it would be constitutional. If the collection fee
was designed to raise revenue for general public
purposes, rather than to cover specific governmental expenses, it is in reality a tax. *Dukesherer
Farms, Inc v Dep't of Agriculture (After Remand),*
405 Mich 1, 15-16, 20-21; 273 NW2d 877 (1979). If
the one percent collection fee is a tax, MCL 211.44;
MSA 7.87 violates Const 1963, art 4, § 32 because
it does not distinctly state that the fee is a tax.
Even if the fee was designed to reimburse local
governments for expenses incurred in assessing
real property and collecting property taxes, the
amount of the fee (one percent) must reasonably
approximate the total amount spent on each parcel of property or the fee will be deemed a tax.
*City of Dearborn v State Tax Comm,* 368 Mich
460, 472; 118 NW2d 296 (1962); *Foreman v Oakland Co Treasurer,* 57 Mich App 231, 237; 226
NW2d 67 (1974), *lv den* 394 Mich 815 (1975). These
questions were properly raised in plaintiffs' complaint, but were not decided by the trial court. I
therefore would remand this case for a determination of whether the fee is a tax.

Second, the majority does not decide whether
the collection fee was designed to cover the expenses of assessing property *and* collecting property
taxes. The lower courts concluded as a matter of
law that the fee covered only the costs of collecting
taxes, *i.e.,* the expenses incurred in preparing and
mailing tax bills and processing payments. In
response to this litigation, the Legislature
amended MCL 211.44; MSA 7.87 by changing the
term "collection fee" to "property tax administration fee." 1982 PA 503, § 2, explains that this
change was

  intended to clarify the legislative intent and cure

any misinterpretation surrounding the fact that a
"collection fee" is imposed to cover all costs neces-
sary and incident to the collection of property
taxes, including the costs of assessing property
values and in the review and appeal processes.

Since a determination of what expenses the one
percent collection fee was designed to cover may
be crucial to the issue whether the fee is a tax, I
would decide this legal question.

WILLIAMS, C.J. (*dissenting*). I cannot agree with
my brother BRICKLEY'S suggestion that it is imma-
terial whether the exaction in this case is a fee or
a tax. Although it is sometimes difficult to affix a
label, I believe it makes a great deal of difference.
A tax is a revenue-raising exercise of the govern-
ment's taxing power, while a fee is an exercise of
the police power. The government may not seek to
raise revenue through an enactment under the
police power, *Merrelli v St Clair Shores,* 355 Mich
575, 583; 96 NW2d 144 (1959), and a statutorily
enacted fee must bear a reasonable relationship to
the expense for which it is chargeable. *Vernor v
Secretary of State,* 179 Mich 157, 168-169; 146 NW
338 (1914); *City of Dearborn v State Tax Comm,*
368 Mich 460, 472; 118 NW2d 296 (1962).

Our Court of Appeals has held that fees charged
under the Probate Code for administration of es-
tates, graduated in relation to the size of the
estate, are justified by a direct relationship be-
tween the size of the estate and the level of
services required for its administration by the
Probate Court. *Foreman v Oakland Co Treasurer,*
57 Mich App 231; 226 NW2d 67 (1974), *lv den* 394
Mich 815 (1975). In my opinion, defendants here
have shown no such relationship between the size
of the tax bill being collected and the cost of
collection.

I would therefore affirm.

RILEY, J., took no part in the decision of this case.