MAPLEVIEW ESTATES, INC v CITY OF BROWN CITY

Docket No. 236366. Submitted June 10, 2003, at Detroit. Decided July 1, 2003. Approved for publication September 11, 2003, at 9:00 A.M. Leave to appeal sought.

Mapleview Estates, Inc., brought an action in the Sanilac Circuit Court against the city of Brown City, seeking a declaration that a Brown City ordinance that increased the fees for connecting new homes to the city's water and sewer systems violated the Headlee Amendment, Const 1963, art 9, § 31, in the absence of voter approval of the increase. Both parties moved for summary disposition. The court, Donald A. Teeple, J., granted the plaintiff's motion, but denied the plaintiff's motion for attorney fees and costs. The defendant appealed, and the plaintiff cross-appealed.

The Court of Appeals *held*:

1. The Headlee Amendment prohibits a local government from levying a tax in excess of that permitted by law or charter and it prohibits increasing the authorized tax rate without approval of the electors.

2. A charge that is a user fee is not affected by the Headlee Amendment. To be considered a fee, a charge must serve a regulatory purpose rather than a revenue-raising purpose, be proportionate to the necessary costs of the service, and be voluntary, in the sense that the payor may choose not to avail himself of the benefit and thereby avoid the charge. The fees at issue in this case meet these criteria. The trial court erred in determining that the increased fees constituted a disguised tax increase that was subject to the Headlee Amendment.

3. The increased fees were adopted within the defendant's authority under the Revenue Bond Act, MCL 141.101 *et seq.*, and were reasonable because they were lower than the actual costs of connection to the water and sewer systems.

4. Under Const 1963, art 9, § 32, attorney fees and costs are only to be awarded where the suit to enforce Const 1963, art 9, § 31 is sustained. Additionally, under MCR 2.625(A)(1), costs may only be awarded to the prevailing party. Thus, because the plaintiff's suit was not sustained and the plaintiff is not a prevailing party, the plaintiff is not entitled to attorney fees and costs.

Affirmed in part, reversed in part, and remanded for entry of summary disposition in favor of the defendant.

*D'Agostini, Sable and Ruggeri, P.C.* (by *Richard J. Sable, Timothy A. Pierce,* and *Shawn Y. Grinnen*), for the plaintiff.

*Seibert and Dloski, PLLC* (by *Lawrence W. Dloski*), for the defendant.

Amicus Curiae:

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Clifford T. Flood*), for the Michigan Municipal League.

Before: OWENS, P.J., and BANDSTRA and MURRAY, JJ.

PER CURIAM. Defendant Brown City appeals as of right a grant of summary disposition in favor of plaintiff Mapleview Estates, Inc. We reverse and remand for entry of summary disposition in favor of defendant.

Plaintiff, the developer of a manufactured housing community, sued after defendant raised the fees for connecting new homes to its central water supply and sewer systems. Plaintiff argued that the fee was actually a disguised tax and, under the Headlee Amendment, Const 1963, art 9, § 31, should have been submitted to a popular vote. The trial court agreed and granted plaintiff's motion for summary disposition but denied plaintiff's motion for an award of costs and attorney fees pursuant to Const 1963, art 9, § 32.

Defendant argues that under controlling law its tap-in fees are a user fee, not a tax, and therefore not subject to the Headlee Amendment, and that the amount it set for the fees is reasonable. We agree. Whether the tap-in fees are a "tax" or a "user fee" is a

question of law that this Court reviews de novo. *Bolt v City of Lansing*, 459 Mich 152, 158; 587 NW2d 264 (1998). The Headlee Amendment reads, in relevant part, as follows:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon. [Const 1963, art 9, § 31.]

This section "adds the requirement of voter approval of new taxes." *American Axle & Mfg, Inc v Hamtramck*, 461 Mich 352, 356; 604 NW2d 330 (2000).

The Supreme Court, in *American Axle & Mfg, supra*, concluded:

> "The plain language of Headlee prohibits a local government from levying a tax in excess of that permitted by law or charter and it prohibits increasing the authorized tax rate without approval of the electors. But nowhere does Headlee require a direct vote of the electors in order to permit a local unit of government to increase taxes if the local unit of government has the authority by law or charter to levy the increase." [*Id.* at 358, quoting *Smith v Scio Twp*, 173 Mich App 381, 386; 433 NW2d 855 (1988).]

A tax imposed without voter approval "unquestionably violates the Headlee Amendment." *Bolt, supra* at 158. Conversely, a charge that is a user fee, "is not affected by the Headlee Amendment." *Id.* at 159. The Headlee Amendment does not define either "tax" or "fee," so "[t]here is no bright-line test for distinguishing between a valid user fee and a tax that violates the Headlee Amendment." *Id.* at 160. A fee is generally " 'exchanged for a service rendered or a benefit

conferred, and some reasonable relationship exists between the amount of the fee and the value of the service or benefit.' " *Id.* at 161, quoting *Saginaw Co v John Sexton Corp of Michigan*, 232 Mich App 202, 210; 591 NW2d 52 (1998). Taxes are for the purpose of raising revenue. *Bolt, supra* at 161.

There are three factors to consider when deciding if a charge is a fee or a tax. *Id.* To be considered a fee, a charge must: (1) serve a regulatory purpose rather than a revenue-raising purpose, (2) be proportionate to the necessary costs of the service, and (3) be voluntary, in the sense that the payor may choose not to avail himself of the benefit and thereby avoid the charge. *Id.* at 161-162. The inquiry into the first two factors is closely intertwined:

"To be sustained [as a regulatory fee], the act . . . must be held to be one for regulation only, and not as a means primarily of producing revenue. Such a measure will be upheld by the courts when plainly intended as a police regulation, and the revenue derived therefrom is not disproportionate to the cost of issuing the license, and the regulation of the business to which it applies." [*Id.* at 162, quoting *Vernor v Secretary of State*, 179 Mich 157, 167; 146 NW 338 (1914).]

Defendant's increased fees for tapping into the water and sewer systems are not wholly out of proportion to its actual costs of supplying the services. According to an engineering report commissioned by the city, the fee for connecting a single site to the water system should be $706 and the fee for connecting a single site to the sewer system should be $1,630. The fees actually set by the city council were $600 and $800. These fees are in fact less than the actual costs of providing the services, so they are not exces-

sive and cannot be regarded as a means of producing revenue.

The *Bolt* Court quoted the Headlee Blue Ribbon Commission's definition of "user fee" as follows: "A 'fee for service' or 'user fee' is a payment made for the *voluntary receipt* of a measured service, in which the revenue from the fees are [sic] used only for the service provided." *Bolt, supra* at 167 n 16, quoting Headlee Blue Ribbon Commission, A Report to Governor John Engler, § 5, p 30 (September 1994) (emphasis in *Bolt*). That definition seems to describe exactly the situation in this case—those who want new homes in Brown City connected to the municipal water and sewer systems must pay tap-in fees, and the revenue generated by those fees is used for the maintenance and operation of those systems. There was no documentary evidence submitted to show that the funds generated by the increased tap-in fees were to be used for anything other than maintaining and improving the water and sewer systems. Moreover, as this Court recently stated in *Graham v Kochville Twp*, 236 Mich App 141, 152; 599 NW2d 793 (1999), "[b]y exacting [a] fee for connection to the water system, the purpose is clearly to regulate and control the use and distribution of water provided by the municipal system." The tap-in fee clearly serves a regulatory rather than a revenue-raising purpose.

The increased tap-in fee is also voluntary because plaintiff could choose not to avail itself of the benefit and thereby avoid the cost. *Bolt, supra* at 162. A user fee, the *Bolt* Court stated, is " 'only compulsory for those who use the service, have the ability to choose how much of the service to use, and whether to use it all.' " *Id.* at 167, quoting Headlee Blue Ribbon Com-

mission Report, *supra*, § 5, p 29. Plaintiff is engaged in a commercial enterprise and has the apparent desire to earn profit. It need not pay the tap-in fee unless it decides to install a home site in a particular location. It has the ability to choose whether to use the service at all, and those who occupy plaintiff's homes have the ability to choose how much water and sewer they wish to use. The increased tap-in fee thus meets all three of the *Bolt* criteria for a user fee rather than a tax: (1) it serves a regulatory rather than a revenue-related purpose, (2) it is proportionate to the costs of the service, and (3) it is voluntary. *Id.* at 161-162. We find that the trial court erred when it found that the increased tap-in fees constituted a tax.

As defendant obligingly points out, even if the tap-in fees are not a tax, they must still be reasonable. *Atlas Valley Golf & Country Club, Inc v Village of Goodrich*, 227 Mich App 14, 24; 575 NW2d 56 (1997). The Revenue Bond Act (RBA), MCL 141.101 *et seq.*, authorizes municipalities to "purchase, acquire, construct, improve, enlarge, extend or repair" public improvements such as water and sewer systems, and to "own, operate and maintain" them. MCL 141.104, 141.103(a) and (b). The act also authorizes cities to fix the rate for these services, which includes "the charges, fees, rentals, and rates that may be . . . imposed for the services." MCL 141.103(e), 141.121. "A connection charge clearly falls within the ambit of a [municipality's] authority to fix the rate for services" under the RBA, and must simply be "reasonable." *Atlas Valley, supra* at 21. This Court has declined "to attempt to determine with mathematical precision the relation of the connection to the charge paid by the owner of each parcel of land, since we

presume 'that the amount of the fee is reasonable, unless the contrary appears upon the face of the law itself, or is established by proper evidence.'" *Graham, supra* at 154, quoting *Vernor, supra* at 168.

Because the fees actually set by defendant were lower than the actual costs of connecting to the systems, they are reasonable. The circuit court erred when it granted summary disposition in favor of plaintiff. Moreover, because the fees were not improperly enacted, they are valid. We therefore find that summary disposition should have been granted in favor of defendant.

Plaintiff argues on cross-appeal that it was entitled to actual costs, including attorney fees. However, under Const 1963, art 9, § 32, attorney fees and costs are only to be awarded where the suit to enforce Const 1963, art 9, § 31 is sustained. *Macomb Co Taxpayers Ass'n v L'Anse Creuse Public Schools*, 455 Mich 1, 8; 564 NW2d 457 (1997). Likewise, under MCR 2.625(A)(1), costs may only be awarded to the prevailing party. Because we find that summary disposition should have been granted to defendant, plaintiff is not entitled to actual costs. See, e.g., *Meagher v Wayne State Univ*, 222 Mich App 700, 729; 565 NW2d 401 (1997) ("prevailing party" ultimately means "a party who wins on the entire record"); see also MCR 2.625(B)(2).

We affirm in part, reverse in part, and remand for entry of summary disposition in favor of defendant. We do not retain jurisdiction.