DAWSON v SECRETARY OF STATE

Docket No. 264103. Submitted February 8, 2006, at Lansing. Decided March 20, 2007, at 9:15 a.m.

   Todd Dawson and others, all of whom had been assessed a driver responsibility fee under MCL 257.732a(2)(a) or (b) after being convicted of crimes enumerated in that statute, brought an action in the Court of Claims against the Secretary of State and the Department of Treasury, seeking a declaration that the driver responsibility fees violate the constitutional protections against double jeopardy and the guarantees of equal protection under the laws. The plaintiffs also alleged that the fees constitute a tax imposed nonuniformly, in violation of Const 1963, art 9, § 3, and that the statute failed to identify the tax distinctly, as required by Const 1963, art 4, § 32. The plaintiffs sought to certify a class of similarly situated persons and a refund of the fees paid. The court, Joyce Draganchuk, J., granted summary disposition for the defendants, concluding that no double jeopardy violation had occurred, because the Legislature intended to impose a civil rather than a criminal penalty; that the fees did not violate equal protection, given the statute's purpose of raising revenue; and that a rational basis existed for assessing the fees. The court also determined that the Michigan Constitution did not require that the assessments be labeled a "tax." The plaintiffs appealed.

   The Court of Appeals *held*:

   1. The driver responsibility fees imposed under MCL 257.732a(2)(a) and (b) do not violate the constitutional protections against double jeopardy. The fees are civil sanctions rather than criminal penalties.

   2. The driver responsibility fees do not violate the constitutional guarantees of equal protection.

   Affirmed.

   WILDER, P.J., would further conclude that the driver responsibility fees are taxes under the tests of *Bolt v City of Lansing*, 459 Mich 152 (1998), and *City of Dearborn v State Tax Comm*, 368 Mich 460 (1962). Because there is nothing obscure or deceitful about the way the driver responsibility fees are stated in the law,

Const 1963, art 4, § 32 has not been violated despite the fact that the statute does not identify as taxes the amounts imposed.

ZAHRA, J., concurring in part, agreed that the fees do not violate the United States and Michigan constitutions and that they are civil sanctions rather than criminal penalties, but disagreed that the fees are taxes. The fees lack the essential characteristic of enforced contribution necessary for them to be taxes.

DAVIS, J., concurring in part, would conclude that the driver responsibility fees are constitutionally permissible criminal fines that do not result in a double jeopardy violation.

CRIMINAL LAW — AUTOMOBILES — DRIVER RESPONSIBILITY FEES — DOUBLE JEOPARDY — EQUAL PROTECTION — TAXATION.

The driver responsibility fees imposed upon conviction of certain felonies and misdemeanors do not violate the constitutional protections against double jeopardy or the guarantees of equal protection under the laws (US Const, Am V, XIV; Const 1963, art 1, §§ 2, 15; MCL 257.732a[2][a],[b]).

*Henry L. Guikema, P.C.* (by *Henry L. Guikema*), for the plaintiffs.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Michael F. Murphy* and *Melissa R. Christianson*, Assistant Attorneys General, for the defendants.

Before: WILDER, P.J., and ZAHRA and DAVIS, JJ.

WILDER, P.J. Plaintiffs appeal as of right a Court of Claims order granting defendants' motion for summary disposition under MCR 2.116(C)(8) and (10). On appeal, plaintiffs seek to have the matter remanded for a class certification of all persons assessed fees under subsections 2(a) and (b) of the driver responsibility law, MCL 257.732a, arguing that the provisions violate the double jeopardy and equal protection clauses of the United States and Michigan constitutions. Plaintiffs also challenge subsections 2(a) and (b) on the grounds that the provisions violate the uniformity of taxation clause, art

9, § 3, and the "distinct statement" clause, art 4, § 32,[1] of the Michigan Constitution. Because we hold that subsections 2(a) and (b) of the driver responsibility law do not violate those constitutional provisions, we affirm.

### I. THE LAW AT ISSUE

Michigan's driver responsibility law (DRL) became effective October 1, 2003. 2003 PA 165. Subsequent amendments of it became effective May 1, 2004.[2] The DRL provides for a fee assessment against drivers who are convicted of specific misdemeanor or felony offenses or who accumulate seven or more qualifying points on their driving records.[3] MCL 257.732a(1) and (2). Under the DRL, the Secretary of State assesses the fee and "shall transmit the fees collected . . . to the state treasurer," who credits the money received to the general and the fire protection funds. MCL 257.732a(10). The fees assessed by the Secretary of State are in addition to any fines, fees, and costs imposed in court.

The Secretary of State "shall" suspend the driver's license of an individual who fails to pay the fee assessed or establish an installment plan within the time limits specified by MCL 257.732a(3) and (5). The suspension of driving privileges is removed upon the payment of the delinquent assessment and any other fees. MCL 257.732a(5).

---

[1] For convenience, we dub article 4, § 32 the "distinct statement" clause. It provides: "Every law which imposes, continues or revives a tax shall distinctly state the tax." Const 1963, art 4, § 32.

[2] See 2004 PA 52.

[3] Plaintiffs do not challenge MCL 257.732a(1), which provides for the assessment of fees against licensed and unlicensed drivers once in each year that a driver has seven or more points on his or her driving record that have accumulated in a two-year period under the point system set forth in MCL 257.320a and MCL 257.629c.

## II. FACTS AND PROCEDURAL HISTORY

Each plaintiff was convicted of an enumerated driving offense or an equivalent local ordinance referred to in MCL 257.732a(2)(a)(*i*) to (*v*)[4] or MCL 257.732a(2)(b)(*i*) to (*iv*).[5] Accordingly, each plaintiff was assessed either a "$1,000.00 driver responsibility fee each year for 2 consecutive years" under MCL

[4] The offenses in MCL 257.732a(2) include misdemeanors and felonies. The qualifying offenses under MCL 257.732a(2)(a) include:

(*i*) Manslaughter, negligent homicide, or a felony resulting from the operation of a motor vehicle, ORV, or snowmobile.

(*ii*) Section 601b(2) or (3), 601c(1) or (2), or 653a(3) or (4) [of the Michigan Vehicle Code, MCL 257.601b(2) and (3), MCL 257.601c(1) and (2), and MCL 257.653a(3) and (4)].

(*iii*) Section 625(1), (4), or (5), section 625m [of the Michigan Vehicle Code, MCL 257.625(1), (4), and (5) and MCL 257.625m], or section 81134 of the natural resources and environmental protection act, 1994 PA 451, MCL 324.81134, or a law or ordinance substantially corresponding to section 625(1), (4), or (5), section 625m, or section 81134 of the natural resources and environmental protection act, 1994 PA 451, MCL 324.81134.

(*iv*) Failing to stop and disclose identity at the scene of an accident when required by law.

(*v*) Fleeing or eluding an officer.

[5] The offenses in MCL 257.732a(2)(b) also include misdemeanors and felonies. The qualifying offenses under MCL 257.732a(2)(b) include:

(*i*) Section 625(3), (6), (7), or (8) [of the Michigan Vehicle Code, MCL 257.625(3), (6), (7), and (8)].

(*ii*) Section 626 [of the Michigan Vehicle Code, MCL 257.626].

(*iii*) Section 904 [of the Michigan Vehicle Code, MCL 257.904].

(*iv*) Section 3101, 3102(1), or 3103 of the insurance code of 1956, 1956 PA 218, MCL 500.3101, 500.3102, and 500.3103.

257.732a(2)(a) or a "$500.00 driver responsibility fee each year for 2 consecutive years" under MCL 257.732a(2)(b).[6]

Plaintiffs filed an amended complaint seeking a declaration that subsections 2(a) and (b) are constitutionally invalid, alleging that the provisions violate federal and state double jeopardy and equal protection guarantees. Plaintiffs further alleged that the driver responsibility fees constitute a tax imposed on an arbitrary class of taxpayers, in violation of the uniformity of taxation clause, Const 1963, art 9, § 3, and that the tax is unconstitutional for failing to identify the DRL as a "tax" as required by Const 1963, art 4, § 32. In addition, plaintiffs sought an order certifying a class of similarly situated persons and a refund of all driver responsibility fees paid.[7] Defendants filed a motion for summary disposition, and plaintiffs responded with a countermotion for summary disposition, requesting that their claim be permitted to proceed on the issues of class certification and remedy.

Following a hearing, the Court of Claims dismissed plaintiffs' claims, concluding that no double jeopardy violation occurred because the Legislature intended to impose a civil, and not a criminal, penalty. The Court of Claims further concluded that the DRL fees do not violate equal protection guarantees, given the statute's purpose to raise revenue, and that a rational basis existed for assessing fees against persons who drain state resources by committing offenses related to driv-

---

[6] The DRL also assesses fees of $150 and $200 each year for two consecutive years upon conviction of qualifying offenses listed in MCL 257.732a(2)(c) and (d), respectively.

[7] Plaintiffs concede that not all of them have paid the driver responsibility fees assessed. Whether all the named plaintiffs paid the fees is not dispositive of this appeal.

ing. In rejecting plaintiffs' claim that subsections 2(a) and (b) impose a tax without distinctly identifying it as a tax in violation of art 4, § 32 of the Michigan Constitution, the court determined that the label "tax" was not necessary because the object of the assessments is apparent. Accordingly, the court concluded that plaintiffs' request for class certification was moot and granted defendants' motion for summary disposition. Plaintiffs now appeal.

### III. STANDARDS OF REVIEW

This Court reviews de novo questions of law involving statutory interpretation. *Michigan Muni Liability & Prop Pool v Muskegon Co Bd of Co Road Comm'rs,* 235 Mich App 183, 189; 597 NW2d 187 (1999). This Court also reviews de novo the trial court's grant of summary disposition pursuant to MCR 2.116(C)(8) and (10). See *Maiden v Rozwood,* 461 Mich 109, 119-120; 597 NW2d 817 (1999). Whether a statute violates the federal constitution is a question of law reviewed de novo. *Westlake Transportation, Inc v Pub Service Comm,* 255 Mich App 589, 616; 662 NW2d 784 (2003).

### IV. LEGAL ANALYSIS

### A. DOUBLE JEOPARDY

The first question before us is whether the automatic assessment of driver responsibility fees under subsections 2(a) and (b)[8] of the DRL upon a conviction of a

---

[8] MCL 257.732a(2)(a) and (b) provide, in relevant part:

An individual, whether licensed or not, who violates any of the following sections or another law or local ordinance that substantially corresponds to those sections shall be assessed a driver responsibility fee as follows:

qualifying misdemeanor or felony offense violates the United State and Michigan constitutions' prohibitions against double jeopardy. We hold that there is no double jeopardy violation.

Statutes are presumed to be constitutional unless their unconstitutionality is readily apparent. See *Neal v Oakwood Hosp Corp*, 226 Mich App 701, 719; 575 NW2d 68 (1997). A party challenging the constitutionality of a statute has the burden of proving its unconstitutionality. *Complete Truck & Auto Parts, Inc v Secretary of State*, 264 Mich App 655, 659; 692 NW2d 847 (2004). The primary objective of constitutional interpretation is to realize the intent of the people by whom and for whom the constitution was ratified and to interpret the constitution according to the intent of the voters who ratified it. *Wayne Co v Hathcock*, 471 Mich 445, 468; 684 NW2d 765 (2004).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). This Court gives effect to the Legislature's intent as expressed in the statute's terms, giving the words of the statute their plain and ordinary meaning. *Willett v Waterford Charter Twp*, 271 Mich App 38, 48; 718 NW2d 386 (2006). "If the statu-

---

(a) Upon posting of an abstract that an individual has been found guilty for a violation of law listed or described in this subdivision, the secretary of state shall assess a $1,000.00 driver responsibility fee each year for 2 consecutive years . . . .

\* \* \*

(b) Upon posting of an abstract that an individual has been found guilty for a violation of law listed in this subdivision, the secretary of state shall assess a $500.00 driver responsibility fee each year for 2 consecutive years . . . .

tory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *USAA Ins Co v Houston Gen Ins Co,* 220 Mich App 386, 389; 559 NW2d 98 (1996). Nothing will be read "into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the language of the statute itself." *Roberts v Mecosta Co Gen Hosp,* 466 Mich 57, 63; 642 NW2d 663 (2002).

Plaintiff's attack on the constitutionality of subsections 2(a) and (b) of the DRL is framed in the abstract, not based on the application of the particular facts. Thus, plaintiffs challenge the facial validity of the provisions. A party bringing a facial challenge "must show that no circumstances exist under which [the challenged statutory provision] would be valid." *People v Sands,* 261 Mich App 158, 160-161; 680 NW2d 500 (2004). Because plaintiffs bring a facial challenge to the law, our decision is narrow.

Both the United States and Michigan constitutions prohibit placing a person twice in jeopardy for the same offense. US Const, Am V;[9] Const 1963, art 1, § 15.[10] Michigan's Double Jeopardy Clause is "essentially identical" to its federal counterpart and is "construed consistently with the corresponding federal provision." *People v Nutt,* 469 Mich 565, 575, 594; 677 NW2d 1 (2002). "The prohibition against double jeopardy provides three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same

---

[9] US Const, Am V provides in relevant part: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."

[10] Const, 1963, art 1, § 15, provides in relevant part: "No person shall be subject for the same offense to be twice put in jeopardy."

offense after conviction; and (3) *it protects against multiple punishments for the same offense." Id.* at 574 (emphasis added).

*Hudson v United States*, 522 US 93, 99; 118 S Ct 488; 139 L Ed 2d 450 (1997), noted that the Double Jeopardy Clause "protects only against the imposition of multiple *criminal* punishments for the same offense, *and then only when such occurs in successive proceedings.*" (Internal citations omitted; second emphasis added.) Here, there were not successive proceedings, but only one criminal adjudicative proceeding in each case, followed by the ministerial act of the imposition of fees by the Secretary of State. By the plain language of MCL 257.732a(2), liability for a driver responsibility fee attaches automatically upon conviction of a relevant crime. Therefore, as in *Hudson,* there is no second prosecution or proceeding in violation of double jeopardy. *Hudson, supra* at 99.

We also conclude there is no multiple punishment double jeopardy violation. Generally, if alleged multiple punishment is involved, the Double Jeopardy Clause restrains prosecutors and courts, not the Legislature. *People v Mitchell*, 456 Mich 693, 695; 575 NW2d 283 (1998); *People v Ford*, 262 Mich App 443, 448; 687 NW2d 119 (2004). "Where the issue is one of multiple punishment rather than successive trials, the double jeopardy analysis is whether there is a clear indication of legislative intent to impose multiple punishment for the same offense. If so, there is no double jeopardy violation." *Mitchell, supra* at 695-696. Here, the Legislature unmistakably intended to add additional sanctions to the offenses listed in MCL 257.723a(2)(a) and (b). Because the Double Jeopardy Clause does not prohibit multiple punishments imposed by the Legislature, the driver responsibility fee does not violate double jeopardy.

Clearly, the Legislature could have directly amended the statutes proscribing the various criminal offenses listed in MCL 257.732a(2)(a) and (b) and indicated that upon conviction of one of those offenses, the trial court would require the offender to pay a higher fee. See *People v Shipley*, 256 Mich App 367, 378; 662 NW2d 856 (2003). Although the Legislature instead chose to amend the Michigan Vehicle Code, we hold that it does not matter for double jeopardy purposes that the Legislature chose to place the higher fees in one single new section of the Michigan Vehicle Code. To hold otherwise would elevate form over substance. See generally, e.g., *FACE Trading, Inc v Dep't of Consumer & Industry Services*, 270 Mich App 653, 663; 717 NW2d 377 (2006) ("Courts are not bound by labels in determining whether the 'beyond a reasonable doubt' standard is required. . . . To do so would place form over substance.").

The constitutional provisions against double jeopardy are not violated when the civil penalty serves a purpose distinct from any punitive purpose. *People v Duranseau*, 221 Mich App 204, 206; 561 NW2d 111 (1997). The driver responsibility fees serve purposes distinct from punitive purposes. Revenues generated by the driver responsibility fee go to the general fund or the fire protection fund. MCL 257.732a(10). Any money appropriated from the fire protection fund is used for fire protection grants to certain cities, villages, and townships. MCL 257.732a(9). Accordingly, the fees serve the purpose of (1) raising revenue and (2) compensating the government (and therefore society) for some of the costs related to acts of the offenders.

*Hudson* used a two-step analytical framework to distinguish between a secondary civil remedy and a prohibited second criminal punishment. *Hudson, supra*

at 99.[11] The first step requires a court to use principles of statutory construction to determine "whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " *Id.* (citation omitted). Here the Legislature specifically identified the assessment as a "fee." MCL 257.732a.

In addition, such monetary assessments are traditionally not viewed as punishment. *Hudson, supra* at 104. The Legislature did not label the fee as a "criminal penalty," though it used that term elsewhere in the Michigan Vehicle Code. See MCL 257.204b(2) ("The court shall impose a criminal penalty for a conviction of an attempted violation of this act or a local ordinance substantially corresponding to a provision of this act in the same manner as if the offense had been completed."). Furthermore, revenue from driver responsibility fees goes into the common treasury of the general fund and the fire protection fund. MCL 257.732a(10). As a result of the Legislature's specific use of the term "fee," and the intent of the Legislature to raise revenue, we hold that the Legislature meant what it said: that the driver responsibility fee is intended to be a fee (a civil sanction).

---

[11] In doing so, the United States Supreme Court disavowed *United States v Halper*, 490 US 435, 436; 109 S Ct 1892; 104 L Ed 2d 487 (1989), in which the Supreme Court originally considered "whether and under what circumstances a civil penalty may constitute 'punishment' for the purposes of double jeopardy analysis." The *Halper* Court deemed as punitive the government's subsequent civil action to impose a $2,000 civil penalty for each of the defendant's violations because the civil penalty was "more than 220 times greater than the Government's measurable loss . . . ." *Id.* at 439. The *Hudson* Court concluded that *Halper* had improperly departed from traditional double jeopardy analysis by focusing on whether the sanction was so grossly disproportionate to the harm caused as to constitute punishment and by assessing the character of the actual sanctions imposed. *Hudson, supra* at 101.

However, even if the Legislature intended a fee to be a civil penalty, with regard to the second step of the analysis, *Hudson* stated that a seemingly civil penalty may be " 'so punitive either in purpose or effect,' as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' " *Hudson, supra* at 99 (citations omitted). *Hudson* enumerated guideposts for this inquiry. " '[T]hese factors must be considered in relation to the statute on its face,' and *only the clearest proof* will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."* Hudson, supra* at 100 (citations omitted; emphasis added).

First, this Court must consider " '[w]hether the sanction involves an affirmative disability or restraint[.]' " *Hudson, supra* at 99 (citation omitted). Plaintiffs concede that the driver responsibility fee is a monetary assessment and does not involve an affirmative disability or restraint.

Second, this Court must consider " 'whether [the sanction] has historically been regarded as a punishment[.]' " *Id.* (citation omitted). Monetary penalties have not historically been considered punishment; " 'the payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforceable by civil proceedings since the original revenue law of 1789.' " *Id. at* 104, quoting *Helvering v Mitchell*, 303 US 391, 400; 58 S Ct 630; 82 L Ed 917 (1938).

Third, this Court must consider " 'whether [the sanction] comes into play only on a finding of scienter[.]' " *Hudson, supra* at 99 (citation omitted). The relevant driver responsibility fees are assessed only upon conviction of certain crimes. MCL 257.732a(2). Therefore, the scienter required for the fee is identical to that required for the crime on which it is premised.

However, "no one factor should be considered controlling as they 'may often point in differing directions.' " *Hudson, supra* at 101 (citation omitted).

Fourth, this Court must consider " 'whether [the sanction's] operation will promote the traditional aims of punishment—retribution and deterrence[.]' " *Id.* at 99 (citation omitted). As the Court stated in *Montana Dep't of Revenue v Kurth Ranch*, 511 US 767, 778; 114 S Ct 1937; 128 L Ed 2d 767 (1994), "[c]riminal fines, civil penalties, civil forfeitures, and taxes all share certain features: They generate government revenues, impose fiscal burdens on individuals, and deter certain behavior." However, the *Hudson* Court found that "the mere presence of [a deterrent] purpose is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.' " *Hudson,* supra at 105 (citation omitted).

Fifth, this Court must consider " 'whether the behavior to which [the sanction] applies is already a crime[.]' " *Id.* at 99 (citation omitted). Imposition of the fee at issue is contingent upon conviction of a crime. MCL 257.732a(2). However, in *Hudson,* the conduct for which the sanctions were imposed similarly formed the basis for criminal indictments. *Hudson, supra* at 105. The Court noted that this "fact is insufficient to render the money penalties . . . criminally punitive, particularly in the double jeopardy context." *Id.* (citations omitted). A legislature "may impose both a criminal and a civil sanction in respect to the same act or omission[.]" *Helvering, supra* at 399. In addition, *Helvering* upheld the imposition of an administrative penalty for income tax fraud despite the taxpayer's acquittal of criminal fraud charges. See *id.* at 395.

Sixth, this Court must consider " 'whether an alternative purpose to which [the sanction] may rationally

be connected is assignable for it[.]' " *Hudson, supra* at 99 (citation omitted). It is rational to conclude that assessing a fee on persons convicted of specific offenses will deter those offenses. However, "deterrence 'may serve civil as well as criminal goals.' " *Id.* at 105 (citation omitted). The driver responsibility fees will protect the law-abiding public by deterring dangerous driving and similar offenses. Just as *Hudson* reasoned that "[t]o hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' for double jeopardy purposes would severely undermine the Government's ability to engage in effective regulation of institutions such as banks," to hold here that the deterrent effect of the driver responsibility fee renders the fee criminal for double jeopardy purposes might undermine our Legislature's ability to protect the public from dangerous driving and similar offenses. *Id.*

Finally, this Court must consider " 'whether [the sanction] appears excessive in relation to the alternative purpose assigned[.]' " *Hudson, supra* at 99-100 (citation omitted). Here, the alternative purpose is the generation of revenue. See MCL 257.732a(10). Violators of the criminal statutes enumerated in MCL 257.732a(2) cause government entities significant expenses, including the costs of police response, prosecutor's offices, and courts. As the trial court noted, "given the cost of state funding of police agencies, prosecutor's offices, courts, and all the other direct and indirect costs associated with criminal driving offenses, it cannot be said that the assessments are excessive for purposes of raising revenue."

Plaintiffs contend that the language and context of the driver responsibility law do not permit characterization of the statute as an enactment by the Legislature for the police-power purpose of recouping costs

incurred by the state as a result of the criminal conduct. Plaintiffs further contend that if "that argument is made and considered, . . . then a fact question exists regarding the actual amount of unreimbursed costs incurred by the State and the amount anticipated to be received from the fees." We disagree. The sixth *Hudson* factor requires the court to ponder " 'whether an alternative purpose to which [the sanction] *may rationally be connected* is assignable for it[.]' " *Hudson, supra* at 99 (citation omitted; emphasis added). We conclude that the alternative purpose, revenue generation, is an alternative purpose to which the fees are rationally connected. Moreover, the *Hudson* factors " 'must be considered in relation to the statute on its face,' and 'only the clearest proof' will suffice to override legislative intent . . . ." *Id.* at 100 (citations omitted). Here, plaintiffs lack the required clearest proof.

Finally plaintiff's facial attack on the constitutionality of MCR 257.732a(2) requires showing that no circumstances exist under which the challenged provision is valid. *Sands, supra* at 160-161. Because there are circumstances in which the driver responsibility fees are valid (at the very least in situations where the criminal conduct imposes great costs on society and the government), the unconstitutionality of the DRL is not readily apparent, and we reject plaintiff's facial challenge to the law under the double jeopardy clauses.

### B. EQUAL PROTECTION AND UNIFORMITY OF TAXATION

Plaintiffs next argue that subsections 2(a) and (b) violate the equal protection clauses of the Michigan and United States constitutions, and the Michigan Constitution's uniformity of taxation clause, by imposing fees on an arbitrary class of persons. We disagree.

Both the United States and Michigan constitutions guarantee the equal protection of the laws. US Const, Am XIV; Const 1963, art 1, § 2; *Frame v Nehls*, 452 Mich 171, 183; 550 NW2d 739 (1996). Because "Michigan's equal protection provision [is] coextensive with the Equal Protection Clause of the federal constitution," *Crego v Coleman*, 463 Mich 248, 258; 615 NW2d 218 (2000), our equal protection analysis is unitary.

When reviewing allegations of equal protection violations, we use one of three tests. "Which test applies depends on the type of classification made by the statute and the nature of the interest affected." *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 469; 639 NW2d 332 (2001). In this case, plaintiffs concede that the proper standard of review is the rational basis test. The rational basis test is deferential: "Under the rational basis test, a statute qualifies as constitutional if its classification scheme rationally relates to a *legitimate governmental purpose.*" *Id.* (emphasis added). In *TIG Ins Co, Inc v Dep't of Treasury*, 464 Mich 548, 557-558; 629 NW2d 402 (2001), our Supreme Court explained the leniency of the rational basis test:

> The legislation will pass "constitutional muster if the legislative judgment is supported by any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable." To prevail under this standard, a party challenging a statute must overcome the presumption that the statute is constitutional. Thus, to have the legislation stricken, *the challenger would have to show that the legislation is based "solely on reasons totally unrelated to the pursuit of the State's goals,"* or, in other words, the challenger must "negative every conceivable basis which might support" the legislation. [Citations omitted; emphasis added.]

Plaintiffs also acknowledge that whether the driver responsibility assessment is a fee or a tax, " 'there is no

discernable difference between the equal protection and uniformity of taxation clauses,' " quoting *Armco Steel Corp v Dep't of Treasury*, 419 Mich 582, 592; 358 NW2d 839 (1984). Therefore, the proper level of review, regardless of whether the driver responsibility fees are fees or taxes, is the rational basis test.

In this case, the class of persons subject to the driver responsibility fees consists of licensed or unlicensed individuals who are convicted of any of the offenses listed in MCL 257.732a(2). As noted earlier, one apparent governmental purpose for this subsection is to generate revenue. MCL 257.732a(10). Thus the assessment of the driver responsibility fees is rationally related to the governmental purpose of generation of revenue. Further, the state, including its local subdivisions, is responsible for costs associated with arresting, processing, and adjudicating individuals who commit the offenses listed in MCL 257.732a(2)(a) and (b). Therefore, the classification scheme imposed by the DRL is rationally related to the legitimate governmental purpose of generating revenue from individuals who impose costs on the government and society. We hold that the DRL does not, on its face, deprive plaintiffs of the equal protection of the law.

### C. THE "DISTINCT STATEMENT" CLAUSE

Plaintiffs argue that the DRL violates article 4, § 32 of the Michigan Constitution, which provides: "Every law which imposes, continues or revives a tax shall distinctly state the tax." We disagree.

All statutes and ordinances are given a strong presumption of constitutionality. *Taylor Commons v City of Taylor*, 249 Mich App 619, 625; 644 NW2d 773 (2002). In other words, legislation is presumed constitutional

absent a clear showing to the contrary. *Caterpillar, Inc v Dep't of Treasury*, 440 Mich 400, 413; 488 NW2d 182 (1992).

The distinction between a governmental "fee" and a tax is the subject of much caselaw. First, we consider cases addressing whether state fees are disguised taxes. "Whether a charge is a permissible fee or an illegal tax is a question of law." *Westlake Transportation, Inc, supra* at 611. "Taxes have a primary purpose of raising revenue, while fees are usually in exchange for a service rendered or a benefit conferred." *Id.* at 612. " '[W]here revenue generated by a regulatory "fee" exceeds the cost of regulation, the "fee" is actually a tax in disguise.' " *Id.* at 614 (citation omitted). "The test is whether the fee is proportional, not whether it is equal, to the amount required to support the services it regulates. We conclude that the Court of Claims did not clearly err in finding that the fees were not 'wholly disproportionate.' " *Id.* at 615 (citation omitted). *Westlake Transportation, Inc* upheld the state's annual fees of $100 for interstate and intrastate motor carriers under the Motor Carrier Act, MCL 475.1 *et seq. Id.* at 592. The Court held that the charges were regulatory fees, not unconstitutional taxes. *Id.* at 616.

In *City of Dearborn v State Tax Comm*, 368 Mich 460, 463; 118 NW2d 296 (1962), the city of Detroit maintained facilities in Dearborn and Highland Park for the storage and repair of equipment, including buses. Dearborn and Highland Park assessed as personal property such buses and other equipment stored and maintained within their city limits. *Id.* The city of Detroit paid the personal property taxes so assessed. But then Detroit decided that its buses and equipment were not subject to property taxes because it had paid 50¢ a vehicle to the state under the Michigan Vehicle Code for license

plates. *Id.* at 463-464. The trial court held that the 50¢ charge for license plates and registration was not a tax. *Id.* at 465. Our Supreme Court held that the 50¢ registration and license plate charge was regulatory in nature, a legitimate exercise of the police power, and the Court found it significant that the charge was not designated as a tax in the statute. *Id.* at 468. The Court further stated:

> [W]e think that the requirement that the sum of 50¢ shall be paid in connection with the furnishing of a set of number plates for a State or municipally owned and operated motor vehicle *is merely an incident of a proper regulation. The amount thereof and the obvious intent of the legislature* to provide a reasonable method for identification of publicly owned and operated motor vehicles . . . *[are] not consistent with the claim that such payment was intended as a tax.* [*Id.* at 469 (emphasis added).]

*City of Dearborn* further reasoned:

> *The precise nature of a burden imposed by public authority is not necessarily determined by the name applied to it but depends on the intent of the legislative body prescribing it, the purpose thereof, and the incidents pertaining to it.* The fact that such a burden is expressly designated as a tax is not necessarily controlling. If the application of that term rests on implication, as in the present case, obviously the nature and purpose of the required payment ha[ve] added significance. In the case of *Van Horn* v. *People,* 46 Mich 183 [9 NW 246 (1881)], there was involved an act of the legislature of Michigan imposing, in terms, a *tax* on dogs. *The Court held, however, that the act was regulatory in its nature, that it could not be regarded as a revenue measure but was in fact a regulatory expedient adopted for a specific purpose. In consequence, the amount of the charge imposed was not subject to constitutional provisions relating to taxes and taxation generally.*
>
> In *Vernor* v. *Secretary of State,* 179 Mich 157 [146 NW 338 (1814)], the distinction between a tax and a license fee

was considered at some length, the amount thereof and the relation to the purpose sought to be accomplished being emphasized. *It was pointed out that imposing an exaction larger than necessary to defray expenses is not mere regulation but amounts to the raising of revenue as a main purpose and is, in consequence, a tax.* In connection with the discussion it was said (p 168):

"*It is true that it has been held that what is a reasonable fee must depend largely upon the sound discretion of the Legislature, having reference to all the circumstances and necessities of the case. It will be presumed that the amount of the fee is reasonable, unless the contrary appears upon the face of the law itself, or is established by proper evidence.*" (Citing cases.)

In the case at bar it does not appear that the sum of 50¢ for a set of license plates for a motor vehicle operated on the public highway is more than a mere nominal amount, which actually may be less than the expense involved.

We are in accord with the conclusion of the circuit court of Wayne county in the suit for a declaratory decree. *The amount of the charge for license plates may not properly be regarded as a tax* exempting the buses of the Detroit transportation system from taxation as personal property under the general law of the State. It is, rather, an incident of regulation under the police power having for its purpose means of identification of motor vehicles operating on public streets and highways. [*Id.* at 471-473 (some emphasis added).]

Thus, *City of Dearborn* held that the 50¢ license charge was a fee and not a tax.

Under *City of Dearborn*, if a state charge is involved, it is not sufficient, in order to find that a charge is a "tax," merely to show that the "fee" is larger than the costs it would defray. Rather,

"*what is a reasonable fee must depend largely upon the sound discretion of the legislature,* having reference to all the circumstances and necessities of the case. *It will be*

*presumed that the amount of the fee is reasonable,* unless the contrary appears upon the face of the law itself, or is established by proper evidence." [*Id.* at 472 (citation omitted; emphasis added)].

Under this standard, if the charge is "reasonable," it is a fee and not a tax; if it is "unreasonable," i.e., larger than needed to defray the relevant costs, and mainly has a revenue-raising purpose, it is a tax.

There is also law relating to whether a municipal "fee" is an illegal subterfuge for raising revenue. In *Kircher v Ypsilanti*, 269 Mich App 224; 712 NW2d 738 (2005), this Court considered whether a municipal fee was so high as to constitute an illegal revenue-raising measure. The Court stated the law:

> Fees charged by a municipality must be reasonably proportionate to the direct and indirect costs of providing the service for which the fee is charged. *Merrelli v St Clair Shores,* 355 Mich 575, 583, 588, 96 NW2d 144 (1959). Such a fee is presumed reasonable unless it is facially or evidently so *"wholly out of proportion to the expense involved"* that it "must be held to be *a mere guise or subterfuge to obtain the increased revenue." Id.* at 584, quoting *Vernor v Secretary of State,* 179 Mich 157, 168, 170, 146 NW 338 (1914). [*Id.* at 231-232 (emphasis added).]

*Kircher* considered a $50 fee imposed for missing a scheduled property inspection, even though the fees for actual inspections were lower. *Id.* at 231. This Court found "no showing that the [$50] fee generates more than incidental revenue or that it is not reasonably related to the cost of sending an inspector to a location and then rescheduling the inspection." *Id.* at 232.

Whether municipal "fees" are actually taxes that must be approved by local voters under the Headlee

amendment[12] has also been the subject of appellate review. *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 661-662; 697 NW2d 180 (2005), considered whether municipal solid waste disposal fees were actually taxes:

> Plaintiff alleged that the various fees ... constituted taxes because those fees served a revenue generating purpose and were disproportionate to the value of the benefit provided .... Plaintiff further alleged that the tax imposed by ... the ordinance was not approved by a majority of the township electors as mandated by the Headlee Amendment ....

*Wheeler* discussed the fee-versus-tax distinction: " 'Generally, a "fee" is "exchanged for a service rendered or a benefit conferred, and some reasonable relationship exists between the amount of the fee and the value of the service or benefit." ... A *"tax," on the other hand, is designed to raise revenue.'* " *Id.* at 665 (citations omitted; emphasis added).

*Wheeler* noted three criteria for a municipal user or service fee: "(1) [A] user fee serves a regulatory purpose, (2) a user fee is proportionate to the necessary costs of that service, and (3) a user fee is voluntary." *Id.*, citing *Bolt v City of Lansing*, 459 Mich 152, 161-162; 587 NW2d 264 (1998).[13] *Bolt* is the principal case for the three "fee" criteria. "These factors should be considered

---

[12] The Headlee amendment provides, in pertinent part: "Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified ... without the approval of a majority of the qualified electors of that unit of Local Government voting thereon." Const 1963, art 9, § 31.

[13] See also *Jones v Detroit Bd of Water Comm'rs*, 34 Mich 273, 275 (1876) (holding that "water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity").

in their totality, and a weakness in one area does not mandate a particular finding." *Westlake Transportation, Inc, supra* at 612.

Similarly, *Lapeer Co Abstract & Title Co v Lapeer Co Register of Deeds*, 264 Mich App 167, 181-182; 691 NW2d 11 (2004), considered whether a $1 a page fee for copies of property records was a tax for Headlee purposes. This Court held that it was not. The $1 fee for copies was imposed by the register of deeds as a seller in a transaction. *Id.* at 182. See also *Kowalski v Livonia*, 267 Mich App 517, 520; 705 NW2d 161 (2005) (holding that "franchise fee" imposed by city on cable service provider was not a tax for Headlee purposes).

In *Mapleview Estates, Inc v Brown City*, 258 Mich App 412; 671 NW2d 572 (2003), a manufactured housing community developer challenged, as a disguised tax, the city's raising of fees for connecting new homes to its water and sewer systems. " '[T]here is no bright-line test for distinguishing between a valid user fee and a tax that violates the Headlee Amendment.' " *Id.* at 414 (citation omitted). Applying the three-part *Bolt* test, this Court held that the charges were fees, not taxes. The charges were lower than the actual costs and were voluntary, because a homeowner could choose not to use the services. *Id.* at 415-416.

In *Gorney v Madison Hts*, 211 Mich App 265; 535 NW2d 263 (1995), the plaintiff challenged city property tax administration fees. The fees were authorized by MCL 211.44(7). The plaintiff contended that the fees violated the distinct statement clause and the prohibition against double taxation.[14] *Id.* at 267. Relying on *Foreman v Oakland Co Treasurer*, 57 Mich App 231, 238; 226 NW2d 67 (1974), *Gorney* noted that "in order

---

[14] See Const 1963, art 9, § 3.

for a fee to be deemed a tax, there must be *no reasonable relationship between the fee and the expense* of the service provided." *Gorney, supra* at 268 (emphasis added). *Gorney* discussed "taxes" versus "assessments":

> "[T]axes and assessments . . . have a number of elements in common. Both are exactions or involuntary contributions of money the collection of which is sanctioned by law and enforceable by the courts. . . . [H]owever, . . . *[e]xactions which are imposed primarily for public rather than private purposes are taxes. . . . Revenue from taxes, therefore, must inure to the benefit of all,* as opposed to exactions from a few for benefits that will inure to the persons or group assessed." [*Id.* at 269 (citations omitted; emphasis added).]

*Gorney* held that the property tax administration fees were not unconstitutional taxes disguised as fees. *Id.* at 267-270.

We find that under these standards, regardless of whether the three-pronged *Bolt* test or the *City of Dearborn* standard is applied, the driver responsibility fees are not fees but taxes.[15] Applying the *Bolt* standards, we conclude that even if the driver responsibility fees serve a regulatory purpose, they are not proportional to the cost of any service provided and are clearly not voluntary, but automatic upon the conviction of relevant offenses. MCL 257.732a(2).[16] Moreover, rather than being fees for a service provided, the driver responsibility fees are a revenue-raising measure for the general and fire protection funds. MCL 257.732a(10).

---

[15] Notably, at oral argument, the assistant attorney general representing the Secretary of State conceded as much.

[16] Although the only sanction for failure to pay the "fee" is revocation of the offender's driver's license, we hold that this sanction is severe enough to remove the "fee" from the realm of voluntariness. The loss of a driver's license is a significant enough sanction that the payer of the "fee" cannot be said to do so "voluntarily."

Alternatively, applying the *City of Dearborn* standard, the driver responsibility fees are clearly unreasonable as fees, as they are beyond the cost of any regulation of driver's licenses. There is no evidence that these substantial fees are proportional to the costs of regulating the fee-payers' driver's licenses. Therefore, we hold that the driver responsibility fees are, in reality, taxes designed to raise revenue and, as such, were required to comply with the distinct statement clause.

The next question is whether the driver responsibility "fees," which we hold to be taxes, are "distinctly state[d]," as required by the distinct statement clause. Our Supreme Court has stated that the intent of the distinct statement clause is *"to prevent the Legislature from being deceived* in regard to any measure for levying taxes, and from furnishing money that might by some indirection be used for objects not approved by the Legislature." *Westinghausen v People*, 44 Mich 265, 267; 6 NW 641 (1880) (emphasis added), quoted in *Rockwell Spring & Axle Co v Romulus Twp*, 365 Mich 632, 637-638; 114 NW2d 166 (1962); see also *Dukesherer Farms, Inc v Dep't of Agriculture Director*, 73 Mich App 212, 221; 251 NW2d 278 (1977) (holding that even if a statutory assessment were construed to instead be a tax, the statute would not be unconstitutional because the language of the statute "is not obscure or deceitful"). There is nothing obscure or deceitful about the way the driver responsibility "fees" are stated in the law. While the statute does not identify the fees as taxes, the amounts of the assessments to be paid by drivers who are convicted of specific misdemeanor or felony offenses are clearly stated. MCL 257.732a(2)(a) and (b). Accordingly, because the actual "fees" paid are not obscure or deceitful, the distinct statement clause has not been violated, and DRL "fees" are not unconstitutional.

V. CONCLUSIONS

The driver responsibility "fees" imposed by MCL 257.732a(2)(a) and (b) do not violate the double jeopardy or the equal protection guarantees of the United States and Michigan constitutions or the uniformity of taxation clause of the Michigan Constitution. Although the driver responsibility "fees" are actually taxes, they are distinctly stated and do not violate the distinct statement clause of the Michigan Constitution. Therefore, we affirm.

ZAHRA, J. (*concurring in part*). I agree with the conclusion reached by my colleagues that the Michigan driver responsibility law (DRL), MCL 257.732a, does not violate the United States and Michigan constitutions. I also agree with the conclusion reached in Judge WILDER's opinion that the DRL fee is a civil sanction and not a criminal penalty. I write separately because I disagree with Judge WILDER's conclusion that the DRL fee is a tax.

In my view, the DRL "fees" are not taxes because they lack the essential characteristic of an enforced contribution. "Essential characteristics of a tax are that it is not a voluntary payment or donation, but an enforced contribution, exacted pursuant to legislative authority." Black's Law Dictionary (6th ed), p 1457, citing *Employment Security Comm v Patt,* 4 Mich App 228, 233; 144 NW2d 623 (1966). Beyond merely requesting that DRL "fees" be paid, the only method of enforcement provided to the Secretary of State is contained in MCL 257.732a(5), which states that "[i]f payment is not received or an installment plan is not established after the time limit required by the second notice prescribed under subsection (3) expires, the

secretary of state shall suspend the driving privileges until the assessment and any other fees prescribed under this act are paid."

The language of the DRL plainly commands the Secretary of State to suspend the driver's license of an offending driver until the DRL "fee" is paid. However, as long as offending drivers do not seek to restore their driving privileges, they need not pay the DRL "fee."[1] The DRL does not address the collection of the "fees" beyond withholding an offending driver's license to drive. Accordingly, the DRL "fee" is not a tax.

DAVIS, J. (*concurring in part*). Plaintiffs appeal as of right an order of the Court of Claims granting summary disposition to defendants pursuant to MCR 2.116(C)(8) and (10). This case involves a challenge to the validity of Michigan's driver responsibility law (DRL), MCL 257.732a, under the United States and Michigan constitutions. Because I conclude that the DRL imposes a constitutionally permissible criminal fine, I concur in affirming the decision of the Court of Claims.

The specific challenge to the DRL is to the "driver responsibility fee" it imposes. Under MCL 257.732a, the Secretary of State is directed to "assess" "fees" in various amounts under various circumstances, including accumulation of points on a driving record or violation of certain enumerated laws. The Secretary of State is directed to terminate the driving privileges of any individual who fails to pay an assessed fee. Collected fees are to be transmitted to the Department of Treasury, which is then directed to allocate the collected funds between the general fund and a special fire

---

[1] In addition, a credible argument can be made that DRL "fees" are not compulsory because commission of the offenses enumerated under the DRL is not compulsory.

protection fund in a specified manner. The fees assessed under the DRL are in addition to any fees, fines, or costs imposed in court directly pursuant to the violation of an enumerated law. Driving privileges will be restored upon payment of delinquent assessments and any other fees. Each plaintiff in this case was assessed a "driver responsibility fee" in some amount pursuant to MCL 257.732a.[1] Plaintiffs assert that the "fees" violate the Michigan and United States constitutional guarantees against double jeopardy[2] and of equal protection,[3] and they further assert that the "fees" constitute taxes in violation of the Michigan Constitution's uniformity of taxation[4] and distinct statement clauses.[5]

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all the evidence submitted by the parties in the light most favorable to the nonmoving party and grants summary disposition only if the evidence fails to establish a genuine issue regarding any material fact. *Id.* at 120. A motion brought under MCR 2.116(C)(8) should be granted only if the complaint is so legally deficient that recovery would be impossible even if all well pleaded facts were true and construed in the light most favorable to the nonmoving party. *Id.* at 119. Only the pleadings may be considered

---

[1] Apparently, not all the plaintiffs have paid the driver responsibility fees assessed, but this fact is not relevant to the disposition of this appeal.

[2] US Const, Am V; Const 1963, art 1, § 15.

[3] US Const, Am XIV; Const 1963, art 1, § 2.

[4] Const 1963, art 9, § 3.

[5] Const 1963, art 4, § 32.

when deciding a motion under MCR 2.116(C)(8). *Id.* at 119-120. The proper interpretation of a statute is likewise reviewed de novo, with the primary purpose of discerning the intent of the Legislature, which is generally best discerned from the language of the statute itself. *Neal v Wilkes*, 470 Mich 661, 664-665; 685 NW2d 648 (2004). Whether a statute violates the federal constitution is also a question of law reviewed de novo. *Westlake Transportation, Inc v Pub Service Comm*, 255 Mich App 589, 616; 662 NW2d 784 (2003).

The first question to be addressed is the nature of the driver responsibility fee. The fact that the statute styles the amount imposed as a "fee" is not controlling. "The precise nature of a burden imposed by public authority is not necessarily determined by the name applied to it but depends on the intent of the legislative body prescribing it, the purpose thereof, and the incidents pertaining to it." *City of Dearborn v State Tax Comm*, 368 Mich 460, 471; 118 NW2d 296 (1962). The question therefore is what the *burden actually is*, irrespective of the label given to it. In my view, the possibilities appear to be that the DRL imposes a *fee,* as stated in the statute; that the DRL surreptitiously imposes a *tax*; or that the DRL actually imposes a *punishment*. Unfortunately, distinguishing among these is not an exact science.

Although "fees" are presumed to be valid and constitutional, they must bear some reasonable resemblance to the expenses they purport to defray, and the "[p]olice power may not be used as a subterfuge to enact and enforce what is in reality a revenue-raising ordinance." *Northgate Towers Assoc v Royal Oak Charter Twp,* 214 Mich App 501, 504; 543 NW2d 351 (1995), vacated in part on other grounds 453 Mich 962 (1996). However, a "fee" does not become a "tax" *merely* by charging more

than the ostensibly related expense; rather, it must be an *unreasonably* larger amount, and that determination must give some deference to " 'the sound discretion of the legislature, having reference to all the circumstances and necessities of the case.' " *City of Dearborn, supra* at 472, quoting *Vernor v Secretary of State*, 179 Mich 157, 168; 146 NW 338 (1914). Even some "incidental revenue" will not convert a fee into a tax. *Kircher v Ypsilanti*, 269 Mich App 224, 232; 712 NW2d 738 (2005).

Expressed slightly differently, our Supreme Court explained that no "bright-line test" exists to distinguish between fees and taxes, but there are several general characteristics to which a court should look. *Bolt v City of Lansing*, 459 Mich 152, 160; 587 NW2d 264 (1998). Generally, fees are proportionate payments given in exchange for, and to support, some technically optional benefit or service; taxes are compulsory payments intended to raise revenue for the benefit of the public as a whole. *Id.* at 161-162. "A true 'fee' . . . is not designed to confer benefits on the general public, but rather to benefit the particular person on whom it is imposed." *Id.* at 165. If the payment goes to benefit the general public, it is a tax. *Id.* at 165-166.

The third possibility is that the DRL imposes neither a fee nor a tax, but a fine. "A 'fine' is commonly defined as '[a] pecuniary punishment imposed by [a] lawful tribunal upon [a] person convicted of [a] crime or [a] misdemeanor.' " *People v Houston*, 237 Mich App 707, 716; 604 NW2d 706 (1999), quoting Black's Law Dictionary (5th ed). See also *Random House Webster's College Dictionary* (2001), which defines "fine" as "a sum of money imposed as a penalty for an offense or dereliction" or "a penalty of any kind." Further, "[a] fine imposed pursuant to a conviction for possession with

intent to deliver a controlled substance is a criminal punishment that serves the object of deterrence." *Houston, supra* at 716. In other words, the purpose of a fine is to deter behavior rather than to raise revenue or fund a service.

When the driver responsibility fee is viewed in light of these three possibilities, I conclude that the only one that fits is a fine. There is no evidence whatsoever that the assessed costs bear any relationship to anything the assessed drivers, or even drivers generally, receive in exchange. The funds are only *collected* by the Secretary of State; they are then transmitted to the Department of Treasury, where they are applied to the *general* fund and to a *fire protection* fund. The DRL clearly imposes a burden that is not proportionate to anything, is not exchanged for any identifiable individual service or benefit, and goes to benefit the general public. However, even if most drivers do so out of necessity, drivers are not technically compelled to pay the fines assessed. They can avoid the driver responsibility fee by obeying the law, and the DRL provides no mechanism for compulsory collection of the assessment. Therefore, the DRL lacks both the relationship to the affected activity required for it to be a fee and the compulsory nature of collection required for it to be a tax.

Conversely, it is obviously designed to deter undesirable acts by drivers. The Legislature saw fit to create a detailed framework for how much must be paid for what kinds of violations of which laws. This is highly consistent with a desire to deter and punish different behaviors on the basis of the severity thereof. Notwithstanding its designation as a "fee," and notwithstanding the Legislature's allocation of the proceeds, the Legislature clearly implemented the DRL with the goal of penalizing drivers for committing certain offenses or

derelictions. I am unaware of any authority stating that the Legislature's decision to allocate the proceeds from such a sanction is of any significance. I conclude that the DRL imposes a fine, rather than a fee or a tax. It is therefore unnecessary to address the constitutional provisions pertinent to taxes.

Defendants argue that, if this is the case, the DRL imposes a *civil* penalty rather than a criminal one. I disagree. Defendants cite *Hudson v United States*, 522 US 93, 99; 118 S Ct 488; 139 L Ed 2d 450 (1997), which significantly notes that whether a particular punishment is civil or criminal turns in large part on whether a given legislature has expressed a preference for either. Here the Legislature has created a distinction between "civil" fines and "criminal" fines, stating that a "crime" includes acts or omissions punishable by, among other things, a "[f]ine not designated a civil fine." MCL 750.5(b). Several other sections of the Michigan Compiled Laws contain a reference to "a fine that is not a civil fine." The Legislature has therefore established that fines are, by default, criminal unless designated civil. If it had been designated a civil penalty, it might still be considered criminal, but only with " 'the clearest proof' " that the Legislature's intent was truly punitive. *Hudson, supra* at 100 (citation omitted). It is worth noting that a fine that " 'is overwhelmingly disproportionate to the government's damages and expenses' " may still be considered criminal punishment even if designated civil. *Dep't of Consumer & Industry Services v Greenberg*, 231 Mich App 466, 470-471; 586 NW2d 560 (1998) (citation omitted). The driver responsibility fee has not been explicitly designated as civil, so I conclude that the DRL imposes a criminal fine.

However, I find no double jeopardy violation here. The double jeopardy clauses protect against successive

prosecutions for the same criminal offense arising out of the same conduct, and they protect against multiple punishments for the same criminal offense. *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001); *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). The assessment by the Secretary of State is not a "successive prosecution," so only the latter protection is implicated. The protection against multiple punishments is a limitation on the courts and on the prosecution, not on the Legislature; its purpose is "to ensure that courts confine their sentences to the limits established by the Legislature." *People v Mitchell*, 456 Mich 693, 695; 575 NW2d 283 (1998). Therefore, the question is really one of legislative intent: although it is *presumed* that the Legislature generally does not intend to punish the same offense under multiple statutes, a clear indication that the Legislature intended otherwise must be followed. *People v Robideau*, 419 Mich 458, 469-470; 355 NW2d 592 (1984). In other words, "the only interest of the defendant is in not having more punishment imposed than intended by the Legislature." *People v Sturgis*, 427 Mich 392, 400; 397 NW2d 783 (1986). "Thus, we need only determine whether the Legislature has authorized multiple punishments." *Mitchell, supra* at 696.

As discussed, the DRL imposes a criminal fine that is automatically imposed on the basis of being found guilty of other criminal acts. It does not seem reasonable to conclude other than that the Legislature intended to impose the fine in the DRL as a punishment in addition to whatever other punishment is imposed for violating the laws enumerated in the DRL. This appears to be a situation in which the Legislature did indeed intend to punish the same offenses under multiple statutes. Therefore, as long as the individuals affected have not been subjected to any penalties or

burdens beyond what the Legislature intended, their rights to be free from double jeopardy have not been violated. The DRL imposes a constitutionally permissible criminal fine on drivers as an additional punishment for other criminal violations.

I concur in affirming the decision of the Court of Claims.